Richard **WILLIAMS**, Appellant,

v.

**THE SS RICHARD DE LARRINAGA,** her boats, tackle, etc., in rem, and Larrinaga Steamship Company, Ltd., as owners, agents, etc., in personam, Appellees.

No. 8204.

United States Court of Appeals Fourth Circuit.

Argued Nov. 21, 1960.

Decided Feb. 25, 1961.

four corners thereof in a position directly above a track running along the hatch coaming. When the hatch covers are closed, the wheels are in a raised position slightly above and not in contact with the tracks, and the covers rest snugly upon the coaming. When the eccentric wheels are turned on their off-center axles, they descend onto the track, raising the cover sections to which attached. The sections are then rolled along the coaming tracks and, with the aid of winches, are stacked in a vertical position at the forward end of the hatchway.

A more detailed description of the eccentric wheels and their operation may be enlightening. The wheels are affixed to off-center axles so that when the wheels are raised and the cover sections lowered, the axle is closer to the track than the true center of the wheel. Conversely, when the wheel is turned on the off-center axle, the axle assumes a position perpendicular to the tracks and farther from them than the true center of the wheel, causing the cover sections to be elevated. When the sections are down and closed, a metal pin is inserted through a mounting, or bushing, on the face of the wheel and through a perforation in the axle to lock the wheel in place. To raise the cover sections, the locking pin is removed and a lever bar is inserted through the left side of the wheel in an open slot across the mounting on the face of the wheel in a position parallel to the coaming track; the lever is then turned clockwise 180° until it is parallel with the track on the right side of the wheel, the hatch cover section is thereby raised approximately one and one-half inches and the wheel itself is balanced in pivot on its axle. The metal safety pin may then be reinserted through the mounting and the axle to lock the wheel in its elevated position, and the lever bar may be removed, leaving the wheels free to roll on the tracks and the sections free to be moved. The greatest force or pressure necessary to turn the wheel exists when the lever bar is in a position vertical to

Sidney H. Kelsey, Norfolk, Va., for appellant.

Charles R. Dalton, Jr., Norfolk, Va. (Seawell, McCoy, Winston & Dalton, Norfolk, Va., on brief), for appellees.

Before SOBELOFF, Chief Judge, and HAYNSWORTH and BOREMAN, Circuit Judges.

BOREMAN, Circuit Judge.

Richard Williams appeals from a final decree of the District Court for the Eastern District of Virginia dismissing his libel for personal injuries brought in rem against the SS Richard de Larrinaga, and in personam against the owner, Larrinaga Steamship Company, Ltd. The District Court found no evidence of unseaworthiness or of negligence and, in an opinion containing findings and conclusions, carefully analyzed and weighed the testimony of the several witnesses.[1] We find no error requiring reversal.

Williams, a longshoreman, was injured aboard the SS Richard de Larrinaga on January 23, 1958, while attempting to raise a hatch cover section on the No. 4 hold when the vessel was berthed at a grain elevator in South Norfolk, Virginia. The No. 4 hold is covered with three heavy metal hatch cover sections which, with their appurtenances, are known and designated as "MacGregor" devices. Each section is equipped with four eccentric wheels, one at each of the

---

1. D.C.E.D.Va.1960, 180 F.Supp. 6, 7.

the track. When the wheel has been turned clockwise and to a balanced position, only a slight degree of pressure on the lever bar is required to so hold it and often the lever must be lightly manipulated and adjusted at this point so as to permit the safety pin to be inserted through both the wheel mounting and the axle perforation.

At the time Williams was injured, he had turned one of the eccentric wheels on one of the No. 4 hold hatch cover sections into position to raise that corner of the section. While attempting to remove the lever bar before inserting the metal pin, the bar was thrown up and backwards out of its slot, striking Williams on the head and throwing him across the deck, inflicting rather serious injuries.

At the trial before the court Williams introduced testimony to show: The axle of the wheel upon which he was working was bent; this condition was observed by other persons aboard the ship at the time of the accident; the bent axle caused the wheel to prematurely eject the lever bar and demonstrations the same day, following the accident, resulted in similar premature ejections; he was unaware of the bent condition of the axle, the defect which rendered the device unseaworthy and the respondents liable for his injuries. The District Court found the testimony adduced by Williams, when contrasted with that introduced by the respondents, "too vague and slim to be persuasive," of but "flimsy quality," and "so hopelessly discredited that [his] case must fail." [180 F.Supp. 7 ].

Williams admitted that he had not observed the condition of the axle of the wheel in question and did not know whether the axle was bent at the time of the accident. While one witness did state that there was a bent wheel on this hatch cover section, thus indicating a bent axle, all other witnesses presented by both Williams and the respondents testified that it would be impossible to observe the condition of the axle because of the structure of the wheel mechanism, or admitted that the bent axle allegedly

observed on the day of the accident was located on a cover section other than on the No. 4 hold. There was testimony to the effect that the demonstration of a wheel throwing a lever bar in a similar manner was conducted on a cover section of the No. 3 hold, or at least on some hold other than and forward of the No. 4 hold. The wheel mechanism in question was not opened or inspected until May 26, 1958, some four months after the accident, when the SS Richard de Larrinaga was docked in Port Arthur, Texas. Although the vessel had made several voyages between the time of the accident and the date of the inspection, and had engaged in loading and unloading operations in the interval, the examination of May 26 disclosed no bent axle but, on the contrary, revealed that the device was in perfect working order and in a seaworthy condition. At no time after the accident had the wheel failed to function properly, and no repairs to the device were ever required or made. The District Court concluded upon this evidence that, as to the respondents, there had been no showing of unseaworthiness or of negligence in the installation, maintenance or use of the wheel.

The respondents introduced the additional testimony of a naval architect and marine engineer who testified, in summary, as follows: Because of the structure, alignment and position of the eccentric wheel mechanism, a bent axle would be extremely unlikely, if not impossible; when the wheel is turned in position to raise the hatch cover, it is in a state of balance on pivot on its axle ("unstable equilibrium") and can be maintained in this position by very slight pressure on the lever bar; the proper procedure to insure that the wheel will remain in this delicate balance is to insert the locking pin before removing the lever bar since the slightest external pressure on the wheel, from whatever source, could cause it to lose balance and revolve back to its starting position; a bent axle would make it difficult, if not impossible, to turn the wheel into position to raise the section; even if the

wheel could be so turned on a bent axle, it would never reach a state of balance because of the axle distortion and continual heavy pressure would have to be applied to hold it.

Williams admitted that the wheel he was manipulating had achieved a state of balance on pivot on its axle and that pressure on the lever bar had been relieved. He testified that it was customary procedure to remove the lever bar before inserting the locking pin but that it would be necessary to insert the pin to prevent the wheel from flying out of balance. He conceded he had attempted to pull the lever bar loose before inserting this pin. The District Court found that even if safe practice did not require insertion of the locking pin before the lever bar was removed, the *sole cause* of the accident was the external force applied by Williams to the wheel, temporarily balanced on the pivot of its axle, through his efforts to disengage the lever bar from its slot in the wheel before locking the wheel in place with the pin.

 There is ample evidence in the record to support the findings. While there are certain conflicts in the testimony, such conflicts, the credibility of the witnesses, and the inferences to be drawn from the evidence are matters properly to be resolved by the District Judge. Having carefully examined the record, we cannot say that the District Court's findings of seaworthiness of the appliance, of the want of negligence on the part of the ship and owner, and its determination of the sole cause of the accident were clearly erroneous. The appliance used by Williams being seaworthy and Williams' own act being the sole cause of his injury, he cannot recover. Donovan v. Esso Shipping Co., 3 Cir., 1958, 259 F.2d 65, 67.

It is contended by Williams that the District Judge invoked the doctrine of assumption of risk but the contention is so patently untenable that it merits no discussion.

Affirmed.