John Elmer **SOUTHARD**, Administrator of the Estate of John Southard, Appellant,

v.

**INDEPENDENT TOWING COMPANY** et al.

No. 18471.

United States Court of Appeals, Third Circuit.

Argued May 4, 1971.

Decided Oct. 28, 1971.

As Amended Dec. 10, 1971.

Aldisert, Circuit Judge, concurred in part, dissented in part and filed opinion.

Allen J. Beckman, Richter, Syken, Ross, Binder & O'Neill, Philadelphia, Pa. (B. Nathaniel Richter, Philadelphia, Pa., on the brief), for appellant.

Francis A. Scanlan, Kelly, Deasey & Scanlan, Philadelphia, Pa., for Independent Towing Co. and another.

C. A. Putz, Krusen, Evans & Byrne, Philadelphia, Pa., for Grammerstorf.

Before KALODNER, VAN DUSEN and ALDISERT, Circuit Judges.

## OPINION OF THE COURT

KALODNER, Circuit Judge.

The primary issue presented is whether the District Court erred in directing jury verdicts in favor of the defendants, at the conclusion of plaintiffs' testimony, on its determination that plaintiff had failed to adduce "any" evidence of alleged unseaworthiness or negligence on the part of the defendants.

Also presented is the issue whether the District Court abused its discretion in excluding the proferred testimony of an expert witness on the ground that the plaintiff had failed to list the witness in his pre-trial memorandum as required by the District Court's local rules.

The instant action was instituted under the Jones Act[1] and the general maritime law, by the plaintiff, as administrator of the Estate of John Southard, against the Independent Towing Company, owner and operator of the tugboat TRITON, the Tugboat Triton Company, and Karl Grammerstorf, owner and operator of the vessel Karl Grammerstorf ("vessel").

Plaintiff's Complaint alleged: plaintiff's decedent Southard was fatally injured on March 13, 1965 when he fell from a ladder while ascending from the TRITON to the vessel near Pier 78, South Wharves, Philadelphia, Pennsylvania; Southard was at the time employed as Master of the TRITON, and as Docking Master of the vessel; the TRITON and the vessel were guilty of operational negligence and unseaworthiness in failing to provide Southard with a proper ladder and its equipment, and to assist in his safe ascent to the vessel.

Plaintiff's testimony, adduced through one Baric, mate of the TRITON, and one Tulewicz, its deckhand, may be summarized as follows:

Sometime after 6:30 A.M. on March 13, 1965, the TRITON was directed to proceed to the vessel then in the vicinity of Pier 78; when it neared the vessel it advised it by radio that it was "coming to"; the TRITON was thereafter secured to the vessel via its lines by its deckhand and two men aboard the deck of the vessel; Southard, without waiting for the customary assistance of the TRITON deckhand and without notice to him, proceeded to place a heavy-gauge portable aluminum 22-foot ladder upon the deck of TRITON against the side of the vessel; the top of the ladder, after it was so placed, extended two or three feet above the bulwark railing of the vessel; Southard proceeded to ascend the ladder to reach the deck of the vessel, and when "his head was just about at the top to the side of the ship's railing" the ladder started to slide and it fell; Southard was thrown and fell against the railing of the tug and then hurled into the water; the deckhand jumped into the water and brought Southard on the tug; Southard died from his injuries shortly thereafter; there were two members of the vessel's crew about five feet away from the top of the ladder when it began to slide; the ladder had two rubber "legs", viz., two rubber pads about 6 inches long and $2\frac{1}{2}$ inches wide with gripping action, to secure against the ladder slipping from the bottom; the ladder had no hooks or grappling equipment at its top; when the accident happened the TRITON and vessel were moving at about 2 miles per hour; Southard was carrying a "walkie-talkie" radio at the time of the accident; neither the deckhand nor the mate of the TRITON advised the vessel that Southard was coming aboard it.

As earlier stated, the District Court determined that the stated testimony did not present "any" evidence of unseaworthiness or negligence on the part of the TRITON or the vessel, and directed jury verdicts in their favor.

Plaintiff here urges that his testimony required submission of the issues of unseaworthiness and negligence to the jury. He contends that the TRITON was both unseaworthy and negligent in failing to provide a ladder with hooks or securing devices at its top, and that the vessel was unseaworthy in the same respects since it was under the duty to provide a means of safe ascent to Southard from the tug to the vessel in light of his employment by the vessel as its docking master. Plaintiff further contends that the vessel was negligent in failing to provide assistance by its crew to Southard by holding the ladder as he was ascending it.

1. 46 U.S.C.A. § 688.

■ On review of the record, we are of the opinion that the District Court did not err in directing the jury to find in favor of the defendants Independent Towing Company and Tugboat Triton Company on the ground that the plaintiff had not adduced "any" evidence of negligence or unseaworthiness on the part of the TRITON. Plaintiff's testimony failed to afford any basis for a jury finding that the TRITON was guilty of negligence in light of the fact that it established that Southard proceeded to place and ascend the ladder without waiting for the customary assistance of the TRITON's deckhand and without notice to him or any member of the crew of the TRITON of Southard's intention to place and ascend the ladder. Further, plaintiff failed to adduce any testimony that the TRITON was unseaworthy by reason of unfitness of the ladder or operational negligence on the part of the TRITON with respect to Southard's use of the ladder.

We are, however, of the opinion that the District Court erred in directing the jury to return a verdict in favor of the defendant vessel because of its view that the plaintiff had failed to adduce "any" evidence of the vessel's alleged negligence in his Jones Act claim.

Applicable to this issue are these well-settled principles:

■■ Issues of negligence in a Jones Act suit "are questions for the jury to determine",[2] and the jury "plays a preeminent role" in Jones Act cases.[3]

■ Since the standard of liability under the Jones Act is that established by Congress under the Federal Employers' Liability Act,[4] "the test of a jury case is simply whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury or death for which damages are sought."[5]

■ In a Jones Act case, a trial court can direct a jury verdict against a plaintiff *"only* in those extremely rare instances where there is a *zero* probability either of employer negligence or that any such negligence contributed to the injury of an employee."[6] (Emphasis supplied.)

■ A ship must provide a safe place to work to a seaman, or one who performs tasks traditionally performed by a ship's crew; that duty encompasses a reasonably safe means of boarding, and departing from, the vessel, and failure to discharge it constitutes negligence.[7]

"The jury is the tribunal under our legal system to decide that type of issue [safe place to work]," and, "[t]o withdraw such a question from the jury is to usurp its functions", and, "[t]o deprive these workers of the benefit of a jury trial in close or doubtful cases is to take away a goodly portion of the relief which Congress has afforded them."[8]

The record establishes that the District Court disregarded the foregoing principles in directing the jury to return a verdict in favor of the vessel on the issue of its negligence.

2. Schulz v. Pennsylvania Railroad Co., 350 U.S. 523, 525, 76 S.Ct. 608, 610, 100 L.Ed. 668 (1956).

3. Ferguson v. Moore-McCormack Lines, Inc., 352 U.S. 521, 523, 77 S.Ct. 457, 1 L.Ed.2d 511 (1957).

4. 45 U.S.C.A. § 51 et seq.

5. Rogers v. Missouri Pacific Railroad Co., 352 U.S. 500, 506, 77 S.Ct. 443, 448, 1 L.Ed.2d 493 (1957).

6. Pehowic v. Erie Lackawanna Railroad Company, 430 F.2d 697, 699–700 (3d Cir. 1970).

7. Superior Oil Co. v. Trahan, 322 F.2d 234, 236 (5th Cir. 1963). *See too* Ferrante v. Swedish American Lines, 331 F.2d 571, 575 (3d Cir. 1964), dismissed 379 U.S. 801, 85 S.Ct. 10, 13 L.Ed.2d 20. *And see,* Massey v. Williams-McWilliams, Inc., 414 F.2d 675, 679 (5th Cir. 1969), cert. den. 396 U.S. 1037, 90 S.Ct. 682, 24 L.Ed.2d 681 (1970), where it was held that failure to supply reasonably safe egress for seamen constitutes negligence.

8. Bailey v. Central Vermont Railway, Inc., 319 U.S. 350, 353–354, 63 S.Ct. 1062, 1064, 87 L.Ed. 1444 (1943).

Viewing the evidence, and all reasonable inferences therefrom, in the light most favorable to the plaintiff,[9] we hold that a jury question was presented by the plaintiff's evidence as to the vessel's negligence.

Plaintiff's evidence established these facts:

The TRITON advised the vessel by radio that it was "coming-to", and when it did so, two members of the crew of the vessel actively assisted the TRITON's deckhand in securing the tugboat to the vessel; the TRITON came-to and was secured to the vessel to effect Southard's transfer from the tugboat to the vessel to "assist the master of the vessel * * * in the [vessel's] docking"; it was customary procedure for a member, or members, of a vessel's crew to hold the top of the ladder used for a docking master's boarding of the vessel and this procedure was not followed; the top of the ladder used by Southard to ascend from the tugboat to the vessel extended two or three feet above the vessel's bulwark railing, and Southard's "head was just about at the top to the side of the ship's railing," when the ladder slipped, carrying Southard down with it; two members of the crew of the vessel were standing about five feet from the top of the ladder when it fell.

▮ The jury could have reasonably found from the foregoing evidence that Southard was employed by the vessel to act as its docking master and that he was in the course of his employment when he was injured. The jury could also have reasonably found that while no actual notice was given to the vessel that Southard was about to come aboard, that the vessel had constructive notice by reason of the tugboat's coming-to and securing to the vessel. The jury could also have reasonably found that it should have become apparent to the two members of the vessel's crew that someone intended to come aboard the vessel when the top of the ladder extended two or three feet above the vessel's bulwark railing. Finally, the jury could have reasonably found that the vessel was negligent in failing to hold (via members of its crew) the top of the ladder in accordance with customary procedure.

▮ In conclusion, we find no merit in the plaintiff's contention that the District Court erred in excluding the testimony of its expert witness Captain Ash on the ground that he had not been properly listed as a witness as required by the District Court's Standing Order for Pretrial Conferences in other than Protracted Cases.[10] The District Court

---

9. Pehowic v. Erie Lackawanna Railroad Company, 430 F.2d 697, 699 (3d Cir. 1970).

10. Section 3 of the Standing Order of the District Court for the Eastern District of Pennsylvania governing "Pre-trial Conferences in Other Than Protracted Cases," adopted on October 23, 1958, provides in relevant part as follows:

"3. * * * Plaintiff's pre-trial memorandum shall contain the following:

"C The names and addresses of all witnesses (except rebuttal) whom the plaintiff expects to call to testify at the time of trial * * *"

Section 4 of the Standing Order, adopted September 28, 1965, further provides:

"4. Except for witnesses called on rebuttal or surrebuttal, a witness neither (1) named in any pre-trial memorandum or supplements thereto of any party, nor (2) authorized by the court in order to prevent manifest injustice, may not testify at the trial if timely objection is made by opposing counsel."

Plaintiff filed his Pre-trial Memorandum on August 8, 1968, and merely listed "expert or experts to be identified." At the pre-trial conference on January 21, 1969, the defendants alone sought leave of Court to supplement their pre-trial memorandum by naming the expert witnesses to be called by them at the trial, and accordingly the District Court, in its pre-trial order, specified only that "[t]he defendants shall furnish names of their expert witnesses within ten days." On October 24, 1969, some ten months later, the plaintiff, without asking leave of the District Court, filed a supplement to his pre-trial memorandum, naming Captain William Ash as an expert witness.

The District Court, upon timely objection of defendants, refused to allow Captain Ash to testify at the trial on the

**1120**

did not abuse its permissible discretion in excluding this testimony. Payne v. S. S. Nabob, 302 F.2d 803 (3rd Cir. 1962), cert. den., 371 U.S. 870, 83 S.Ct. 136, 9 L.Ed.2d 107.

For the reasons above stated the Judgment[11] of the District Court, entered pursuant to its directed verdicts, will be affirmed insofar as it pertains to the defendants Independent Towing Company and Tugboat Triton Company, and reversed insofar as it pertains to the defendant Karl Grammerstorf, and the cause will be remanded to the District Court with directions to grant a new trial limited to the plaintiff's claim alleging negligence of the defendant vessel Karl Grammerstorf, inasmuch as the majority of this panel finds no error in the District Court's determination with respect to the plaintiff's unseaworthiness claim against the defendant vessel.

 If the facts developed on remand show that Southard was in the employ of the defendant vessel when the accident occurred the Jones Act is applicable.[12] Alternatively, if the facts developed on remand show that Southard was an invitee of the defendant vessel when the accident occurred, the federal maritime law is applicable.[13]

ALDISERT, Circuit Judge (concurring in part and dissenting in part).

I agree with that portion of the majority opinion affirming the directed verdict for the Independent Towing Company and Tugboat Triton. I further concur in the conclusion that there was insufficient evidence to establish unseaworthiness of the KARL GRAMMERSTORF. I disagree, however, that

sufficient evidence of negligence was presented to establish a jury question under the Jones Act claim against the vessel's owners.

The majority of this panel find the following to constitute a *prima facie* case of negligence:

> The jury could also have reasonably found that while no actual notice was given to the vessel that Southard was about to come aboard, that the vessel had constructive notice by reason of the tugboat's coming-to and securing to the vessel. The jury could also have reasonably found that it should have become apparent to the two members of the vessel's crew that someone intended to come aboard the vessel when the top of the ladder extended two or three feet above the vessel's bulwark railing. Finally, the jury could have reasonably found that the vessel was negligent in failing to hold (via members of its crew) the top of the ladder in accordance with customary procedure.

Plaintiff's evidence discloses that the standard operating procedure prior to disembarking from the tug and embarking on the vessel was for deckhand Tulewicz to place a ladder against the side of the vessel to be boarded, and then hold the ladder while the pilot made his ascent. This procedure was not followed by the pilot on this fatal day. Instead, before Tulewicz had arrived at the companionway to put up the ladder, Southard, without warning to the deckhand or to his mate, Captain Baric, suddenly erected the ladder himself and began his ill-fated climb. Southard did not wait for the ladder to be held at its bottom

---

ground that the plaintiff had failed to comply with the cited provisions of the Standing Order with respect to naming his witnesses.

11. "AND NOW, to wit: November 13, 1969, in accordance with the verdict of the Jury as directed by the Court, it is ORDERED that Judgment be and the same is hereby entered in favor of Independent Towing Company, Tugboat Triton Company, and Karl Grammerstorf, Defendants, and against John Elmer Southard, Administrator of the Estate of John Southard, Plaintiffs, with costs."

12. Cosmopolitan Shipping Co. v. McAllister, 337 U.S. 783, 790–791, 69 S.Ct. 1317, 93 L.Ed. 1692 (1949).

13. Pope & Talbot, Inc. v. Hawn, 346 U.S. 406, 74 S.Ct. 202, 98 L.Ed. 143 (1953); Gilmore & Black, The Law of Admiralty (1957), §§ 6–61 and 6–62, pp. 382–386.

by the tug's crew or at its top by the crew aboard the vessel. Implicit in our unanimous finding that under these facts there was no *prima facie* case of unseaworthiness or negligence against the tug is that the sudden, precipitous, unexpected, and unconventional action of the captain relieved other members of his crew from responsibility and the tug and its owners from liability in negligence.

Consistency and logic demand that we apply the same rationale in evaluating a possible breach of duty owed Southard by the vessel. In establishing this duty, the critical ingredient is notice to the vessel, either actual or constructive, that Southard was coming aboard at the precise time he made his abortive attempt. That the tug was coming to and securing to the vessel is not sufficient to establish notice that the pilot was attempting to come aboard at the very instant the mooring lines were secured. It was reasonable for the vessel only to anticipate that the ladder was to be expected alongside after the lapse of a time interval represented by Tulewicz's walking from his line-securing position on the tug to that point in the companionway where the ladder was stowed. Tulewicz testified he was enroute to where the ladder was usually stowed when, after walking 20 or 25 feet, he saw the captain falling from the already erected ladder.

I cannot impose upon the vessel the duty of foreseeing that the ladder would be erected against its side simultaneously with the securing of the lines. There is no evidence that such a procedure had ever been followed before, nor is it reasonable to conclude that the vessel should have expected it on this particular day.

Similarly, evidence that there were two men on the vessel near the top of the ladder and that the ladder projected two or three feet above the railing in itself is insufficient to establish negligence (a) in the absence of any proof of the length of time the men had been standing there when first observed by Captain Baric and (b) in the absence of evidence of whether they were there when the ladder had been put up. There is absolutely no evidence that any of the ship's crew were there when Captain Southard first erected the ladder against the vessel's side. Without appropriate evidence of critical elements of time, I find neither actual nor constructive notice to the vessel. Without such notice I would not charge them with failure to hold the ladder fast during Captain Southard's ascent.

I would affirm the judgment of the district court.