**Aloysius NOSAL**

v.

**CALMAR STEAMSHIP CORPORATION.**

**Civ. A. No. 42993.**

United States District Court,
E. D. Pennsylvania.

Feb. 29, 1972.

---

* Board of Education v. Barnette, 319 U.S. 624, 642, 63 S.Ct. 1178, 1187, 87 L.Ed. 1628 (1943).

Charles F. Love, Philadelphia, Pa., for Aloysius Nosal.

Joseph P. Green, Philadelphia, Pa., for Calmar Steamship Corp.

Frank C. Bender, Philadelphia, Pa., for Jarka Corp.

## MEMORANDUM AND ORDER

DITTER, District Judge.

In this longshoreman's action, damages were sought on theories of negligence and unseaworthiness. At the conclusion of the evidence, the court directed a verdict for the defendant on the negligence issue and the jury found for the defendant on the unseaworthiness question. A motion for a new trial now challenges the propriety of the court's refusal to permit the jury to consider plaintiff's allegations of negligence.

This case arises out of an injury which Aloysius Nosal suffered while employed as a ship's carpenter during cargo operations aboard the S/S Beth Flor in Philadelphia. Prior to its reaching Philadelphia, the Beth Flor was partially loaded with steel beams at Sparrows Point, Maryland, by the Jarka Corporation of Baltimore, a stevedoring firm. When the ship arrived in Philadelphia, the Jarka Corporation of Philadelphia was engaged as the stevedoring company to complete the stowage. Plaintiff was employed by Jarka of Philadelphia and went to the hold of the Beth Flor at 8:00 A.M. on July 27, 1966, to help make the cargo secure. At approximately 4:30 P.M., he started toward a different area from that in which he had been working and while walking on a steel beam slipped on what he described as grease. The beam in question was one

that had been loaded at Sparrows Point and the grease was a bluish-black that blended into the color of the steel. As a result of his fall, plaintiff alleged certain injuries and brought the present suit against Calmar Steamship Corporation, which operated the Beth Flor. Calmar then sued the two Jarka firms seeking indemnity from them or either of them, in the event of a recovery against it by plaintiff. All three cases were consolidated for trial.

At the conclusion of the plaintiff's evidence, Calmar moved for a directed verdict on the issue of negligence. The motion was refused, but, when renewed at the conclusion of all of the evidence, was granted. It is this ruling and a general allegation that the evidence would not support a verdict for the defendant which forms the basis for plaintiff's present motion for a new trial.

I. A verdict of seaworthiness precludes a verdict of negligence under the facts in this case.

A longshoreman may recover damages if injured aboard ship as a result of an unseaworthy condition or negligence by the owner. The concepts of unseaworthiness and negligence are separate in maritime litigation: Mitchell v. Trawler Racer, Inc., 362 U.S. 539, 550, 80 S.Ct. 926, 933, 4 L.Ed.2d 941 (1960). A shipowner's duty to provide a seaworthy vessel is absolute. "It is essentially a species of liability without fault, analogous to other well known instances in our law. Derived from and shaped to meet the hazards which performing the service imposes, the liability is neither limited by conceptions of negligence nor contractual in character . . . . It is a form of absolute duty owing to all within the range of its humanitarian policy." Seas Shipping Co. v. Sieracki, 328 U.S. 85, 94–95, 66 S.Ct. 872, 877, 90 L.Ed. 1099 (1946).

The duties imposed upon a shipowner by negligence concepts are far less onerous. There is no liability un-less the owner has failed to exercise due care under all the circumstances. To the shipowner, the difference between unseaworthiness and negligence is the difference between an absolute duty and due diligence. "Unseaworthiness is a *condition,* and how that condition came into being—whether by negligence or otherwise—is quite irrelevant to the owner's liability for personal injuries resulting from it." Usner v. Luckenbach Overseas Corp., 400 U.S. 494, 499, 91 S. Ct. 514, 517, 27 L.Ed.2d 562 (1971).

In the instant case, there was no direct evidence as to how or when the alleged unseaworthy condition came into existence, i. e., there was no direct evidence as to how or when the grease upon which plaintiff slipped got onto the cargo. There was testimony, however, that it must have been present on the beam when loading operations were completed at Sparrows Point. There was also testimony that the Beth Flor's master inspected the hold and cargo before the ship sailed for Philadelphia. From these facts, plaintiff contends the jury could have found the cargo inspection was negligently carried out because the grease was not detected. In other words, it is plaintiff's theory, and his only theory as to negligence, that Calmar was liable because an inspection of the hold failed to reveal the presence of an unsafe condition in the area where plaintiff would later be called upon to work. The existence of such an unsafe condition, however, would have rendered the vessel unseaworthy. Thus, while there has been a "complete divorcement of unseaworthiness liability from concepts of negligence,"[1] here they were reunited by the circumstances of causation. Since the jury decided that Beth Flor was seaworthy, it must follow that the master's cargo inspection was performed not only with due diligence, but also in accordance with the absolute standards required for seaworthiness. Logic denies any other conclusion.

1. Mitchell v. Trawler Racer, 362 U.S. 539, 550, 80 S.Ct. 926, 933, 4 L.Ed.2d 941 (1960).

The facts in the instant matter are similar to those in Turner v. "The Cabins", Tanker, Inc., 327 F.Supp. 515 (D. Del.1971), and Poller v. Thorden Lines A/B, 336 F.Supp. 1231 (E.D.Pa.1970). In both cases it was asserted that a slippery condition constituted unseaworthiness and proof of the owner's negligence. The fallacy of submitting to a jury dual theories of liability where one includes the other is illustrated by the verdict in *Turner*: the owner was found to have been negligent but it was also held there was no unseaworthiness. In effect, this amounted to a finding that under the concept of seaworthiness the ship's deck was not slippery, but under the concept of negligence it was. These conclusions were hopelessly contradictory and a new trial was granted. I believe a more logical approach was taken by the Honorable Alfred L. Luongo of this Court in *Poller*. Judge Luongo directed a verdict for the defendant on the negligence issue, submitting only the unseaworthiness question to the jury. He reasoned that both theories for recovery were based upon the same condition and that plaintiff's burden was far lighter with regard to unseaworthiness. Submitting a single issue to the jury avoided confusion and possibly, inconsistent findings. He refused a new trial after the jury found the vessel to have been seaworthy. In the instant case, had both theories of negligence and seaworthiness been given to the jury in light of its decision on seaworthiness, a finding for plaintiff as to negligence would have made no more sense than did the verdict in *Turner*. I believe the possibility of an absurd result was thus avoided while affording plaintiff his full day in court.

■■ I am well aware that issues of negligence in a longshoreman's suit are questions for the jury to determine. The test established by Congress is whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury for which damages are sought. Thus, a trial court can direct a jury verdict against the plaintiff only in those extremely rare instances where there is a zero probability of either employer negligence or that such negligence contributed to the injury of an employee. See Southard v. Independent Towing Company, 453 F.2d 1115 (3rd Cir. 1971). The test is satisfied here. There is no way that the jury could have found Calmar negligent in view of its conclusion that the ship was seaworthy. Just as it would be erroneous to hold that negligence must be established in order to prove unseaworthiness, so it would be erroneous to hold under the facts of this case that negligence could exist in the absence of unseaworthiness.[2]

Of course, there are numerous instances where a vessel could be seaworthy and yet negligence might cause injury to shipboard personnel. For example, in *Usner*, supra, the ship was seaworthy but a longshoreman was injured by the careless operation of a winch. In Price v. S. S. Yaracuy, 378 F.2d 156 (5th Cir. 1967), a member of the ship's crew observed improper operation of a winch. He negligently failed to report it, and as a result, a longshoreman was injured. Although the vessel was seaworthy, the ship owner was held to be liable. In *Southard*, supra, plaintiff's decedent was killed when thrown from a ladder. He

2. Although the matter is not analyzed extensively, I interpret Lusich v. Bloomfield Steamship Co., 355 F.2d 770 (5th Cir. 1966), to hold that a longshoreman injured by a defective condition (insufficient lighting in a ship's tank) is entitled to have the jury consider both unseaworthiness and negligence. The following year, the same court reached a contrary result in McCall v. States Marine Lines, Inc., 378 F.2d 366 (5th

Cir. 1967). There, a longshoreman alleged injuries from an unseaworthy condition and the shipowner's negligence. The trial court, holding there was no evidence of negligence on the part of the ship, refused to submit that issue to the jury which then found no unseaworthiness. The Circuit Court affirmed in a per curiam opinion without discussion.

was using it to climb from the deck of a tug boat to the deck of a larger ship. Although there was no unseaworthiness on the part of the ship, the Circuit Court ruled that its crew could be found negligent for failing to secure the ladder so that it would not fall.

## II. Weight of evidence does not require new trial.

Plaintiff also contends that a new trial should be granted because the verdict was against the weight of the evidence. He asserts there was no testimony which contradicted his recitation of the facts and his contention about what caused his fall. In making this argument, however, plaintiff overlooks two fundamental principles: the burden of proof was upon him and matters of credibility were for the jury.

It was Nosal's burden to establish unseaworthiness by a preponderance of the evidence. The mere happening of an accident does not prove unseaworthiness: Logan v. Empresa Lineas Maritimas Argentinas, 353 F.2d 373, 377 (1st Cir. 1965). While the shipowner's duty to furnish a seaworthy vessel is absolute, seaworthiness is a relative concept and depends upon the circumstances in which the ship's condition is being questioned. The standard is not one of perfection, but of reasonable fitness for the intended purpose. This means that Nosal had the burden to show Calmar failed in its obligation to provide him with a working surface which was reasonably fit for the work involved in receiving cargo.

By an answer to a special interrogatory, the jury found the Beth Flor was seaworthy. The plaintiff had described the grease on which he fell as being too thin to measure but said it amounted to a skid mark of between two and five inches. (N.T. 31, 58). There was no showing of any other grease or defect in the hold. Obviously, the jury decided that the presence of one spot of grease, lengthened by plaintiff's fall to a smear no longer than five inches and perhaps to only two inches, and of undetermined width, did not render the ship unseaworthy. I cannot say as a matter of law the jury was wrong in reaching this conclusion.

In addition, even in the absence of contradictory evidence, a jury is not required to accept the testimony of any witness. There were certain discrepancies between plaintiff's story, that of his witness, his evidence at trial, and that given at a pretrial deposition. For example, during trial he testified the spot where he slipped was in the sunlight because the hatch was open. At deposition, he had said the hatch was closed and he could not be sure whether the spot was in shadows or shade. While such differences were not necessarily crucial, they may have been sufficient to cast a doubt upon the plaintiff's credibility.

There is no merit in plaintiff's contention that the weight of the evidence entitles him to a new trial.

## III. Calmar's contingent motions.

One further matter remains. Defendant, Calmar Steamship Corporation, has filed motions for a new trial in the related indemnity actions against both stevedoring firms. Calmar's motions were contingent, however, upon the grant of a new trial to Nosal. Since his motion for a new trial must be refused, Calmar's motions will also be refused.