Klaus ZIELINSKI, Plaintiff,

v.

COMPANHIA DE NAVEGACAO MARITIMA NETUMAR, Defendant.

No. 78 Civ. 837–CSH.

United States District Court,
S. D. New York.

Nov. 27, 1978.

Zimmerman & Zimmerman, New York City, for plaintiff; Edward D. Lory, New York City, of counsel.

Cichanowicz & Callan, New York City, for defendant; George T. Delaney, New York City, of counsel.

## MEMORANDUM OPINION & ORDER

HAIGHT, District Judge:

This is an action by a longshoreman against a shipowner to recover damages for personal injuries sustained while plaintiff was loading cargo aboard defendant's vessel. The accident occurred on December 15, 1975; thus plaintiff's claim is governed by the Longshoremen's and Harbor Workers' Compensation Act (the Act), 33 U.S.C. § 901 *et seq.*, as amended in 1972. Under the amended Act, a longshoreman's claim for damages against a shipowner sounds in negligence, 33 U.S.C. § 905(b), and it is the law of this Circuit that the standard of care in such cases is to be ascertained by reference to "land-based principles of negligence."[1] *Lubrano v. Royal Netherlands Steamship Co.*, 572 F.2d 364, 366 (2d Cir. 1978) (quoting *Napoli v. Hellenic Lines, Ltd.*, 536 F.2d 505, 507 (2d Cir. 1976)).

On this motion for summary judgment under Fed.R.Civ.P. 56, I must decide whether the facts as developed thus far present a basis upon which defendant's liability may be predicated. Those facts must be gleaned from a reading of plaintiff's deposition,[2] the

---

1. In aid of developing a uniform federal "common law" of negligence under the Act, the Second Circuit has relied on the principles enunciated in the Restatement of Torts at sections 340–343A, concerning the duties owed by a possessor of land to invitees and licensees. *See, e. g., Lubrano v. Royal Netherlands Steamship Co.*, 572 F.2d 364 (2d Cir. 1978); *Munoz v. Flota Merchante Grancolombiana, S.A.*, 553 F.2d 837 (2d Cir. 1977); *Napoli v. [Transpacific Carriers Corp. etc.] Hellenic Lines, Ltd.*, 536 F.2d 505 (2d Cir. 1976).

2. The only submissions on this motion were the following: (1) Defendant's Notice of Motion, Supporting Affidavit of counsel, and Rule 9(g) Statement, together with Plaintiff's Deposition; (2) Plaintiff's Rule 9(g) Reply and counsel's Affidavit in Opposition. Of all these documents, only the deposition contains sworn averments based on personal knowledge of the facts surrounding plaintiff's accident. *See* Fed. R.Civ.P. 56(c), (e).

pertinent portions of which are set out in the margin.[3]

3. Plaintiff testified that on the day of the accident he was engaged in loading cargo onto defendant's ship, the BOA ESPERANZ; that he had divided his working time that day between the dock, the deck, and the hold; that shortly before his accident he had boarded the ship and was walking from the inshore to the offshore side in order to facilitate the loading of certain cargo, proceeding past hatches No. 3 and No. 2 to a point between hatch No. 2 and No. 1, when his accident occurred. The following exchange then took place:

Q. "When your accident happened, you said it was between No. 1 and No. 2. Where was it in relation to these housings? Was it inshore of the housing, was it before you got to the housing or after you pass the housing or what?"
A. "Once you pass the housing there's an escape hatch about two feet high. In order to go offshore you've got to pass this one and the passageway is very small. When I tried to step over, by the time I came on the other side on my left foot, then I slipped."
　　*　　*　　*　　*　　*　　*
Q. "You say that then you tried to step over or stepped over this escape hatch?"
A. "Right."
Q. "Did this escape hatch have a cover on it?"
　　*　　*　　*　　*　　*　　*
A. "It has a cover, right."
Q. "Was the cover opened or closed?"
A. "It was opened at that particular time."
Q. "Was this like a square opening?"
A. "Yes."
Q. "Could you give us some rough idea of how wide and long it was?"
　　*　　*　　*　　*　　*　　*
A. "I'd say two feet by two feet."
Q. "You stepped over this?"
A. "Yes."
Q. "Was there any space that you could pass in front of the escape hatch or in back of it?
(This is witness indicating)
Q. "You are indicating a narrow space of about six or eight inches?"
A. "Right."
Q. "If I remember correctly you said as you stepped over there you slipped?"
A. "Yes."
Q. "Did you trip on anything?"
A. "No, I didn't trip."
Q. "You just slipped?"
A. "Slipped, right."
Q. "Do you know what you slipped on?"
A. "It was raining."
Q. "Was it a wet deck?"
A. "Yes."
Q. "Was there water on the deck?"
A. "Just started drizzling."
Q. "Was it a steel deck?"
A. "Steel deck, fresh painted."
Q. "Was the paint dry or not?"
A. "The paint was dry."

■ Plaintiff contends that his deposition raises a factual issue, precluding summary

Q. "What you slipped on was really just a little rain that had started to fall?"
A. "Right."
Q. "Was there anything else that you slipped on or just the water?"
A. "The water."
Q. "Was there any rope around there or anything that you tripped on?"
A. "No, I didn't see anything."
Q. "Everything was clear?"
A. "It was clear, I think."
Q. "How was the lighting at that time?"
A. "There was no light."
Q. "Was it dark there?"
A. "It was getting kind of dark."
Q. "Do you mean it was dusk?"
A. "It was dark."
Q. "It was getting dark?"
A. "Getting dark."
Q. "It was not pitch black at that time?"
A. "No."
Q. "Could you see the deck you were stepping on?"
A. "I seen the deck all right."
Q. "Could you see the opening for the escape hatch as you stepped over it?"
A. "The reason I see, I know it was opened, so I'm not going to step inside."
Q. "You knew it was there?"
A. "Yes."
Q. "Did you know it was there because you saw it?"
A. "Yes."
Q. "You then stepped over it and then slipped on the rain water?"
A. "Yes."
Q. "You say it had just started raining?"
A. "Must have started about 4:30, I guess."
Q. "It had not been raining too long?"
A. "No."
Q. "Was there a lot of water around or was the deck just wet from a light rain?"
A. "I would say just from rain."
Q. "Was it a light rain or a heavy rain?"
A. "Light rain."
Q. "Was it sort of a drizzle?"
A. "Yes."
Q. "When you slipped, what happened to you? Did you fall?"
A. "Yes."
　　*　　*　　*　　*　　*　　*
Q. "Did you look around to see what it was that made you slip?"
A. "Yes."
Q. "What did you see there?"
A. "It was slippery."
Q. "From water?"
A. "Yes."
Q. "Rain water?"
A. "Right."
Q. "There was nothing else there?"
A. "No."
Plaintiff's Deposition of May 23, 1978, at 19–26.

judgment, with respect to whether defendant was negligent in failing to provide adequate lighting on the deck under the circumstances in which the accident occurred. I find, however, that plaintiff's deposition testimony proves fatal to this assertion. Even assuming, as plaintiff stated, that there was no illumination on the deck and that darkness was falling, that failure to provide lighting could not have contributed to plaintiff's accident, since, as he testified, he was able to see the deck on which he slipped. Thus, the presence or absence of lighting on the deck is immaterial to any theory of defendant's liability based on negligence.

■ A second question arises as to whether the rain-slicked condition of the deck, standing alone, could form the basis for a finding of negligence. The shipowner is not an insurer of safety; his duty is to provide the longshoreman with a reasonably safe place to work, *Napoli v. Hellenic Lines, Ltd.*, 536 F.2d 505 (2d Cir. 1976), not an accident-free ship. See *Mosley v. Cia. Mar. Adra, S.A.*, 314 F.2d 223 (2d Cir.), *cert. denied*, 375 U.S. 835, 84 S.Ct. 52, 11 L.Ed.2d 65 and 375 U.S. 829, 84 S.Ct. 73, 11 L.Ed.2d 61 (1963).

■ The analytical difficulty in deeming a rain-slicked deck to be an unreasonably dangerous or defective condition arises from the long-standing precedent that "a deck made slippery by rainwater does not constitute an *unseaworthy* condition." *Santamaria v. The S.S. Othem*, 272 F.2d 280, 281 (2d Cir. 1959) (emphasis added). "Unseaworthiness" and "negligence" in the maritime context are related but distinct doctrines.[4] The former, analogous to a warranty concept, premised a shipowner's liability on the presence of a defective condition in his vessel or any part thereof, which rendered it unfit for the purposes for which it was to be used. Once such a defective condition was found, a shipowner was cast in damages for injuries proximately caused by the condition of the ship, without regard to traditional negligence concepts of fault or due care. Thus, an injured longshoreman, having demonstrated the presence of a defective condition, recovered on a theory of strict liability.[5] *See, e. g., Van Carpals v. The American Harvester*, 297 F.2d 9 (2d Cir. 1961), *cert. denied*, 369 U.S. 865, 82 S.Ct. 1031, 8 L.Ed.2d 84 (1962). The point of this analysis, of course, is that if a slippery deck condition caused by rain does not render a vessel unseaworthy, it cannot form the basis for a finding of negligence, since in law it does not constitute an unreasonably dangerous working condition.[6] *See, e. g., Denaro v. United States*, 337 F.2d 275, 276 (2d Cir. 1964); *Lieberman v. Mat-*

---

4. The doctrines are related insofar as the same defective condition obtaining on a vessel might give rise to a finding both of negligence and unseaworthiness. *See, e. g., Miller v. Royal Netherlands S.S. Co.*, 508 F.2d 1103, 1107 (5th Cir. 1975) (citing *Usner v. Luckenbach Overseas Corp.*, 400 U.S. 494, 499, 91 S.Ct. 514, 27 L.Ed.2d 562 (1971); *Gutierrez v. Waterman S.S. Corp.*, 373 U.S. 206, 83 S.Ct. 1185, 10 L.Ed.2d 297 (1963); *Atlantic & Gulf Stevedores v. Ellerman Lines*, 369 U.S. 355, 82 S.Ct. 780, 7 L.Ed.2d 798 (1962) ). For a comprehensive discussion of the two doctrines, see *Earles v. Union Barge Line Corp.*, 486 F.2d 1097 (3d Cir. 1973).

5. The 1972 amendments to the Act eliminated unseaworthiness as a basis for liability, relegating injured longshoremen to the more difficult task of proving some negligence on the shipowner's part. 33 U.S.C. § 905(b). *See, e. g., Landon v. Lief Hoegh & Co., Inc.*, 521 F.2d 756 (2d Cir. 1975), *cert. denied, A/S Arcadia v. Gulf*

*Ins. Co.*, 423 U.S. 1053, 96 S.Ct. 783, 46 L.Ed.2d 642 (1976).

6. Indeed, in cases where claims of unseaworthiness and negligence were based upon precisely the same "condition," district courts, recognizing that a finding of seaworthiness would preclude a finding of negligence, have refused to submit the latter issue for jury consideration, *e. g., Nosal v. Calmar S.S. Corp.*, 339 F.Supp. 1235 (E.D.Pa.1972) (denying new trial on negligence after jury finding of seaworthiness); *Poller v. Thorden Lines A/B*, 336 F.Supp. 1231 (E.D.Pa.1970) (same), and have overturned—as "irreconcilably inconsistent"—verdicts finding both seaworthiness *and* negligence, *e. g., Turner v. "The Cabins," Tanker, Inc.*, 327 F.Supp. 515, 519 (D.Del.1971) (granting new trial). *But see Lunsford v. Halcyon S.S. Co.*, 354 F.Supp. 573 (E.D.Pa.1973) (reconciling jury findings of seaworthiness *and* negligence; *Poller, supra*, and *Turner, supra*, factually distinguished).

*son Nav. Co.*, 300 F.2d 661, 662 (9th Cir. 1962); *Tate v. A/B Svenska Amerika Linein*, 331 F.Supp. 854, 856–58 (E.D.La.), aff'd, 435 F.2d 172 (5th Cir. 1970); *Colon v. Trinidad Corp.*, 188 F.Supp. 97, 100 (E.D.N. Y.1960).

Laying aside this analysis for the moment, one might assume for the sake of argument that the rain-slicked deck did constitute a dangerous condition. What then is standard of care to which a shipowner is held? Land-based principles of negligence hold that:

> "[a] possessor of land is not liable to his invitees for physical harm caused to them by any . . . condition on the land whose danger is known or obvious to them, *unless* the possessor should anticipate the harm despite such knowledge or obviousness." Restatement 2d, Torts, § 343A(1) (emphasis added).

It is clear beyond cavil that plaintiff, a longshoreman since 1962,[7] should have been aware of the fact that rain upon the steel deck of a ship produces a slippery condition. Might a shipowner anticipate a fall upon such a rain-slicked deck? Indeed yes, but his liability does not flow from mere anticipation. In adopting the Restatement formulation as the applicable standard of care in such cases, the Second Circuit has made it clear that the breach of duty leading to liability arises when "the shipowner [is] negligent in not correcting the open and obvious danger" from which he can foresee harm. *Napoli v. Hellenic Lines, Ltd., supra*, 536 F.2d at 509.

There is not, and indeed cannot be, any allegation in this case that defendant was negligent in allowing rainwater to accumulate on the deck of the ship, for it is plaintiff's own sworn testimony that the light drizzle had only just begun at the time of his accident.[8] Rather, it is plaintiff's contention that there is a triable issue of fact with respect to "[t]he type of deck paint used and whether said deck paint had the propensity to become slippery when wet."[9] Thus, plaintiff is relying not solely on the presence of rainwater on the deck, but rather upon the interaction of that rainwater with the deck paint to create what might be termed a latently defective condition on the deck of the ship.[10]

The problem with denying defendant's summary judgment motion based on the above-described theory concerns the manner in which the factual basis for this claim came into the case. Plaintiff's deposition, which is properly before me for consideration on this motion, does not raise an issue with respect to the type of deck paint used. Plaintiff testified simply that the deck had been freshly painted and that the paint (if not the deck) was dry at the time of his fall.[11] The issue as to the type of paint was raised for the first and only time in plaintiff's attorney's Affidavit in Opposition to the instant motion.

Rule 56(e), Fed.R.Civ.P., provides:
"Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in

---

7. Plaintiff's Deposition of May 23, 1978, at 3.

8. On this factual record, it would be sheer speculation to conjure up a theory of negligence based on a failure to provide railings or other handholds on the slippery deck of the BOA ESPERANZ.

9. July 27, 1978, Affidavit in Opposition of Edward D. Lory, attorney for plaintiff, at 2.

10. In such case, the shipowner's duty apparently would be that enunciated in section 343 of the Restatement 2d, Torts, to wit:

> "§ 343. Dangerous Conditions Known to or Discoverable by Possessor

> "A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he
> (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and
> (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and
> (c) fails to exercise reasonable care to protect them against the danger."

11. See note 3, *supra*.

evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. . . ."

 The affidavit here was made on information and belief, based on "knowledge of the contents of plaintiff's counsel's file."[12] There is nothing in this record to support counsel's averment concerning the type of deck paint used. *See, Automatic Radio Co. v. Hazeltine*, 339 U.S. 827, 831, 70 S.Ct. 894, 94 L.Ed. 1312 (1950). Nor is there any showing that plaintiff's counsel would be competent to testify to the matters contained in the affidavit. Because the affidavit fails to comply with the express requirements of Rule 56(e), I may not consider it. *E. g., Union Insurance Soc. of Canton, Ltd. v. William Gluckin & Co.*, 353 F.2d 946, 952 (2d Cir. 1965). Plaintiff's attorney has merely stated a factual contention that he intends to prove at trial, a wholly insufficient showing under Rule 56.[13] *See* 6 (pt. 2) Moore, *Federal Practice*, ¶ 56.-22[1], pp. 56–1318–1320.

Since I conclude, as a matter of law, that, absent the "deck paint" issue, there are no facts disputed or otherwise, sufficient to raise a jury issue on the question of the shipowner's negligence, defendant's motion must be granted.[14] However, I will not enter an order dismissing the complaint at this time. Plaintiff shall have 30 days from the date of entry of this order within which to make a proper showing under Rule 56 sufficient to demonstrate the factual basis for his claim.

It is So Ordered.

---

**12.** Affidavit, *supra* note 9, at 1.

**13.** The Second Circuit has had occasion recently to remind us that "the policy favoring efficient resolution of disputes, which is the cornerstone of the summary judgment procedure, would be completely undermined if unsubstantiated assertions were sufficient to compel a trial." *Securities and Exchange Commission v. Research Automation Corp.*, 585 F.2d 31 at 33 (2d Cir. 1978).

**14.** The parties' statements pursuant to local Rule 9(g) are instructive. Defendant's statement asserts that at the time of the accident plaintiff was a longshoreman, employed by an independent stevedoring contractor, and was engaged in loading cargo on board the BOA ESPERANZ when he "slipped and fell on rainwater which had accumulated on the deck of defendant's vessel as a result of a recent light rain." Plaintiff's statement disputes only the above-quoted portion of defendant's statement, and only on the following two grounds:

"A. That the deck in the area where plaintiff was caused to fall had been freshly painted [; and]

"B. That the deck in the area where plaintiff was caused to fall lacked lighting and/or other artificial illumination despite the onset of dusk and on-coming darkness at 4:30 in the afternoon of [December] 15, 1975."

Local Rule 9(g) is designed "to clear away the fog that so often hangs over the early stages of litigation [, b]y forcing refinement of the issues . . . ." *Research Automation Corp., supra*, 585 F.2d at 34 n.6. Plaintiff, therefore, has refined his case to one of negligence based on either the "lighting" or the "deck paint" theory. For the reasons discussed in text, neither is sufficient to defeat the instant motion.