Daniel J. DONOVAN, Appellant,

v.

ESSO SHIPPING COMPANY.

No. 12424.

United States Court of Appeals
Third Circuit.

Argued April 15, 1958.

Decided Aug. 7, 1958.

Rehearing Denied Sept. 17, 1958.

Francis M. McInerney, Jersey City, N.
J., for appellant.

Walter X. Connor, New York City
(Stryker, Tams & Horner, Newark, N.
J., Kirlin, Campbell & Keating, New
York City, on the brief), for appellee.

Before GOODRICH, McLAUGHLIN and STALEY, Circuit Judges.

STALEY, Circuit Judge.

The strait of Kill van Kull separates Staten Island from the mainland. In navigable waters in or near that strait, appellant seaman Daniel J. Donovan was seriously injured on the morning of February 5, 1954, while working aboard the tanker Esso Binghamton. The vessel was owned by appellee Esso Shipping Company, a Delaware corporation. Appellant Donovan was a resident of New Jersey.

The first issue is whether appellant's injuries were caused solely by his own negligence; the second issue is whether this court has jurisdiction to review the judgment of the district court dismissing the maintenance and cure cause of action where the notice of appeal specifically disclaimed appeal from that portion of the judgment.

The complaint of appellant Donovan contained allegations of negligence under the Jones Act, 46 U.S.C.A. § 688 et seq., and of unseaworthiness, along with a count for maintenance and cure. At the end of plaintiff's evidence, the district court dismissed the causes of action as to negligence and unseaworthiness. It found that the injuries inflicted upon appellant were solely the result of his own negligence and that the tanker was in no way unseaworthy. Its conclusions were based upon the following facts.

Appellant Donovan was an ordinary seaman aboard the Esso Binghamton. He had worked since August, 1951, on various vessels owned by defendant.

On the morning of February 5, 1954, employees of an independent contractor, Butterworth System, Inc., were aboard the Esso Binghamton in order to hoist certain machinery from a launch onto the deck. For this purpose, the employees topped one of the ship's booms.

The boatswain ordered appellant and a seaman named Graveley to top the boom, apparently unaware of the fact that the Butterworth personnel had already done so. The boom was held in its upright position by a topping lift fastened to cleats on the kingpost. Several figure eight turns of the topping lift were taken around the cleats of the kingpost, and finally two half hitches. The boom was thus securely held in its upright position.

According to Donovan's testimony at the trial, after the boatswain had ordered the boom topped, Donovan began walking over to the kingpost. He said he noticed that the boom was already topped. Having decided to report to the boatswain that the boom was already topped, he moved away from the base of the kingpost and paused for a short time near the rail. While he was there, the boom fell and struck him, inflicting serious injuries.[1]

The district court correctly pointed out that this version of the accident might have brought into play the doctrine of res ipsa loquitur. But plaintiff did not stop here. He introduced further evidence by testimony and exhibits which attempted to explain why the boom fell. Unfortunately for appellant, this evidence showed clearly that the boom fell because appellant had loosened one or two of the figure eight convolutions of the topping lift from the kingpost.

Allen Graveley, fellow seaman of appellant Donovan, gave his testimony by deposition. According to his version of the accident, Donovan had intended to loosen the guy lines to move the boom over to a catwalk or flying bridge. Evidently thinking that the guy lines were fastened to the cleats on the kingpost, Donovan removed one or two of the figure eights of the topping lift by mistake. Graveley shouted to Donovan, "Not that —the guys." Graveley said he did not see Donovan put the topping lift figure

---

1. This version which appellant gave on direct testimony is the version of the accident appellant told his hypnotist after his third hypnotic treatment. The treatments were ostensibly given to revive appellant's clouded memory.

eights back onto the kingpost cleats. Donovan then left the area of the base of the kingpost and walked toward the rail. The boom there fell and injured him.

Certain statements introduced by plaintiff corroborate Graveley's testimony. The pharmacist mate stated that immediately after Donovan was injured he heard him admit, "I let go of the wrong line." The testimony of an employee of Butterworth, also introduced by plaintiff, was substantially similar to Graveley's deposition.

Taken together, all of the evidence points to one inevitable conclusion: the injuries plaintiff sustained were the result of his own negligence.

Appellant's claim of unseaworthiness was initially limited to the alleged faulty supervision of the boatswain in giving Donovan the order to top the boom, it being agreed that the gear was not defective. The district court was correct in finding that the evidence did not sustain liability on this theory.

 Now for the first time, appellant advances a rather novel theory of unseaworthiness. He argues that loosening the topping lift made the boom unseaworthy, and that a seaman may recover even though the unseaworthy condition is created solely by his own act. He cites Grillea v. United States, 2 Cir., 1956, 232 F.2d 919, to support his theory. From our reading of the Grillea case, however, we do not see that it stands for this proposition. The cogent argument of appellee adequately answers appellant's contention. The appellee points out that an unseaworthiness recovery is mitigated to the extent of the seaman's own negligence. See Seas Ship-

ping Co. v. Sieracki, 1946, 328 U.S. 85, 94, 66 S.Ct. 872, 90 L.Ed. 1099 note 11. If the injury is caused exclusively by the seaman's negligence, there can be no recovery at all. It is therefore a hollow thing to say that a seaman has a cause of action for a condition created solely by him, but that he cannot recover damages.

Furthermore, there was no showing that the boom was unseaworthy either before or after the act of Donovan in loosening the topping lift. It functioned normally; i. e., upon the loosening of the topping lift, the boom descended. Nor could it be said that the topping lift itself was defective because it did not hold the boom and prevent its fall. There is no evidence that the rope was in any way defective, and the topping lift of course functioned normally when it slipped around the cleat after having been loosened by appellant. Thus, the district court properly dismissed the unseaworthiness cause of action.

We pass now to the separate count on maintenance and cure. Appellee raises the serious question of whether this court has jurisdiction to review the judgment of the district court on this phase of the case. It is appellee's position that appellant lost his right to have us review the maintenance and cure decision by his notice of appeal, which reads:

"Notice is hereby given that the plaintiff above-named, hereby appeals to the United States Court of Appeals for the Third Circuit, from the judgment entered in this action on May 3rd, 1957, dismissing on motion of defendant, all causes of the complaint, other than that cause of complaint on maintenance and cure." [2]

2. On May 3, 1957, after the plaintiff's evidence, the district court stated in an oral opinion that it would dismiss the count of the complaint on negligence and unseaworthiness. No order or judgment was entered until June 6, 1957, and that order and judgment dismissed all three causes of action in the complaint; namely, negligence, unseaworthiness, and maintenance and cure.

If the notice be read to appeal from judgment entered on May 3, 1957, it appeals from nothing, since no judgment was entered on that date. There is in appellant's typed appendix a purported signed stipulation amending the notice of appeal to state that the judgment was entered on June 6, 1957. We will consider this stipulation, although it was apparently not filed and therefore not

■ It is the notice of appeal which gives the court of appeals jurisdiction. Section 2107 of Title 28 of the United States Code provides that "no appeal shall bring any judgment * * * before a court of appeals for review unless notice of appeal is filed * * *." Rule 73(b) of the Federal Rules of Civil Procedure, 28 U.S.C., further provides that "The notice of appeal * * * shall designate the judgment or part thereof appealed from * * *."

■ The filing of a simple notice of appeal was intended to take the place of more complicated procedures to obtain review, and the notice should not be used as a technical trap for the unwary draftsman. A defective notice of appeal should not warrant dismissal for want of jurisdiction where the intention to appeal from a specific judgment may be reasonably inferred from the text of the notice and where the defect has not materially misled the appellee. Railway Express Agency v. Epperson, 8 Cir., 1957, 240 F.2d 189; Hoiness v. United States, 1948, 335 U.S. 297, 69 S.Ct. 70, 93 L.Ed. 16; United States v. State of Arizona, 1953, 346 U.S. 907, 74 S.Ct. 239, 98 L.Ed. 405, reversing 9 Cir., 1953, 206 F.2d 159. For example, an appeal from the denial of a new trial may under exceptional circumstances be treated as an inept attempt to appeal from the judgment which preceded that denial. See Greenwood v. Greenwood, 3 Cir., 1955, 224 F.2d 318, 319.

■ While mere technical omissions in the notice of appeal should not deprive appellant of his right of review, where the appeal is taken specifically only from one part of the judgment the appellate court has no jurisdiction to review the portion not appealed from. Carter v. Powell, 5 Cir., 104 F.2d 428, certiorari denied 1939, 308 U.S. 611, 60 S.Ct. 173, 84 L.Ed. 511; Gannon v. American Airlines, Inc., 10 Cir., 1957, 251 F.2d 476.

■ The notice of appeal in the present case contained more than the type of omission held fatal in the cases cited immediately above. Here there was not a neglect to mention the maintenance and cure count; the notice of appeal specifically sought review of the dismissal of all causes of action "other than that cause of complaint on maintenance and cure." [3] Since appellant unmistakably disclaimed the intention to seek review of the maintenance and cure portion of the judgment, this court is without jurisdiction to consider it.

Our decision is without prejudice to any later suit by appellant to recover whatever maintenance and cure to which he might then be entitled. Calmar S. S. Corp. v. Taylor, 1938, 303 U.S. 525, 532, 58 S.Ct. 651, 82 L.Ed. 993; Cookingham v. United States, 3 Cir., 1950, 184 F.2d 213, 215, certiorari denied 1951, 340 U.S. 935, 71 S.Ct. 495, 95 L.Ed. 675.

The district court had taken the maintenance and cure count from the jury and tried it as a court sitting in admiralty. On post-trial motions, it determined that normally, under circumstances present here, the count should have been tried to a jury. It makes no difference, however, inasmuch as the district court determined that the evidence

part of the record. Only by changing the judgment date to June 6, 1957, can the notice have any legal effect at all. Since the judgment of June 6, 1957, dismissed all three causes of action, it follows that the phrase "other than that cause of complaint on maintenance and cure" was not intended to be descriptive of the judgment appealed from, but was intended to limit the scope of the appeal.

3. Appellant's decision not to appeal from the maintenance and cure determination as manifested in the notice was apparently prompted by his evaluation that his strength on appeal lay in the negligence and unseaworthiness counts, and not in the count on maintenance and cure. The record discloses that appellant had received maintenance and cure in the amount of nearly $12,000, and the district court found that the evidence was not sufficient on which to base a finding that further cure would be beneficial. The district court found further that appellant was not entitled to future maintenance and cure because he had refused rehabilitation treatment.

in this case was insufficient to submit to a jury. Under our decision of Jordine v. Walling, 3 Cir., 1950, 185 F.2d 662, if there is diversity of citizenship and an adequate jurisdictional amount involved, a maintenance and cure count may properly be tried to a jury on the civil side of the court.

The judgment of the district court dismissing the complaint as to negligence and unseaworthiness will be affirmed. The appeal from that portion of the judgment on maintenance and cure will be dismissed.