**Duaine LUNSFORD**

v.

**HALCYON STEAMSHIP COMPANY, INC.**

**Civ. A. No. 70–1513.**

United States District Court,
E. D. Pennsylvania.

Feb. 14, 1973.

John C. Dorfman, Philadelphia, Pa., for plaintiff.

Joseph P. Green, Philadelphia, Pa., for defendant.

## OPINION AND ORDER

GORBEY, District Judge.

This case is a seaman's action brought to recover for injuries allegedly sustained on September 21, 1969, as a result of the negligence of the defendant and the unseaworthiness of defendant's vessel, the SS HALCYON PANTHER.

Plaintiff is a merchant seaman in the United States Merchant Marine and employed by defendant, Halcyon Steamship Company, Inc., in the capacity of messman on defendant's vessel, the SS HALCYON PANTHER.

On September 21, 1969, the vessel was at sea en route to Port Mauritus, in Africa. At 0540 on September 21, 1969, the plaintiff reported to the master of the vessel that he had fallen while getting out of his bunk ten minutes earlier at 0530 and that he had injured his right hand. There was no ladder to the upper bunk in which plaintiff slept. Thereafter, the plaintiff was relieved of all duties aboard the ship until he left the ship for medical reasons on October 16, 1969. The plaintiff received medical treatment aboard ship and from various doctors, whose services were provided to the defendant on September 29th, October 7th, October 8th and October 13th, 1969. Thereafter, the plaintiff was flown back to the United States by the defendant where he came under the care of physicians at the United States Public Health Service at Tampa, Florida, from October 22, 1969 to December 11, 1969; at which time he was declared fit for duty. Plaintiff's losses were agreed to be $1,250.00. The case was tried before a jury. The jury answered interrogatories on a special verdict form as follows:

| | |
|---|---|
| Interrogatory 1 A. | Was the defendant's ship unseaworthy? |
| ANSWER NO | |
| Interrogatory 2 A. | Was the defendant negligent? |
| ANSWER YES | |
| Interrogatory 2 B. | Was the defendant's negligence a cause in whole or in part of plaintiff's injuries? |
| ANSWER YES | |
| Interrogatory 3 A. | Was the plaintiff negligent? |
| ANSWER YES | |
| Interrogatory 3 B. | Was plaintiff's negligence a cause in whole or in part of plaintiff's injuries? |
| ANSWER YES | |
| Interrogatory 3 C. | Express in percentage to what extent plaintiff's negligence was a cause of plaintiff's injuries. |
| ANSWER 35% | |
| Interrogatory 4. | Total amount of damages to which plaintiff is entitled. |
| $8,000.00 | |

Thereafter, judgment was entered in favor of plaintiff in the amount of $5,200.00, and defendant moved for judgment notwithstanding the verdict or in the alternative for a new trial.

## JUDGMENT NOTWITHSTANDING THE VERDICT

The case was tried on the theory that the failure to provide a ladder was both negligence and unseaworthiness. The jury, in Interrogatory 1A, determined the ship was not unseaworthy. Defendant contends as a matter of law that the mere absence of a ladder in a forecastle does not constitute negligence on the part of the shipowner. In support of this position defendant cites Prendis v. Central Gulf SS Co., 201 F.Supp. 595, aff'd, 4 Cir., 330 F.2d 893.

In the *Prendis* case, plaintiff sued for injuries sustained when he was injured while lowering himself from the upper berth of his bunk. He lowered himself from the bunk and, as was his custom he stepped on a bench and fell when the bench toppled over. He alleged negligence of the ship in failing to provide a safe means of getting out of the bunk, and that there was no ladder in the forecastle for use in leaving the upper bunk. The trial court found that the absence of a ladder does not render the vessel unseaworthy or constitute negligence on the part of the owner.[1]

A reading of *Prendis, supra,* shows that case is not applicable to the case presently before this court. In the *Prendis* case, after the court held that the evidence was insufficient to establish that the seaman sustained any injuries from any fall as claimed, thereby denying the plaintiff recovery, the court at 201 F.Supp., page 598, went on to say:

" . . . it becomes unnecessary to discuss the issue urged by proctors touching upon the absence of ladders leading to upper bunks on ships. However that may be, assuming arguendo the truth of the libellant's account of his fall, the Court finds that the mere absence of a ladder in a forecastle does not, standing alone, render the vessel unseaworthy or constitute negligence on the part of the owner."

It is this statement which defendant relies upon in urging the court that it is a matter of law that the absence of a ladder is not negligence or unseaworthiness.

However, in the present case we do not just have the absence of a ladder standing alone. Plaintiff was injured on a rolling, pitching ship on a rough day at sea; while in *Prendis*, the claimed injury was while his vessel was tied to the dock. Also, as the court in Prendis went on in 201 F.Supp. at page 598 by stating:

"The evidence adequately demonstrates that crew bunk ladders are of comparatively recent innovation." . . . "Undoubtedly there was no ladder in libellant's quarters, but bunk ladders were available on the vessel."

In the present case, some 12 years after the accident occurred in *Prendis*, ladders were no longer an innovation and ladders were not available to the plaintiff despite the fact that he had requested a ladder.

1. This was an alternate ground for dismissal of the action. The primary ground was there was oral testimony taken at the trial which consisted of Prendis' testimony, the testimony of some medical experts and the testimony of a maritime expert as to the ship's safety. The rest of the evidence was either by exhibit or deposition. The trial judge, after comparing Prendis' oral testimony about the alleged accident with the deposition of a fellow seaman attempting to support Prendis' story, found it too, to conflict so strongly as to indicate the accident report was cooked-up and was, in fact, false. Also, there was a contradiction between Prendis' claim of promptly reporting the injury to several of the ship's officers and their denial of such report. The court rejected the testimony concerning the fall and dismissed Prendis' personal injury claim for damages due to unseaworthiness and/or negligence under the Jones Act.

■ The above discussed distinctions render the *Prendis* decision inapplicable to the facts of the present case. Therefore, this contention is rejected.

■ The defendant next asserts in his motion for judgment notwithstanding the verdict that assuming this was a question of fact rather than a question of law, there was no evidence sufficient to go to the jury on the question of negligence. The defendant cites numerous cases which state, in effect, that a mere scintilla of evidence is not enough to require the submission of an issue of negligence to the jury and that there must be substantial evidence introduced by the plaintiff to justify submission of the case to a jury. However, examination of the transcript reveals numerous probative facts as to defendant's negligence. Plaintiff was injured on a usual rough day in the Cape of Good Hope.[2] It was more difficult for him to get out of his bunk when the vessel was in rough seas.[3] He requested a ladder for his room.[4] Although at least two other seamen had ladders in their rooms;[5] plaintiff was not given any ladders.[6]

The standard which is applicable in Jones Act cases is that which has been enunciated in Lavender v. Kurn, 327 U. S. 645, 66 S.Ct. 740, 90 L.Ed. 916 (1946).

"It is no answer to say that the jury's verdict involves speculation and conjecture. Whenever facts are in dispute or the evidence is such that fair-minded men may draw different inferences, a measure of speculation and conjecture is required on the part of those whose duty it is to settle the dispute by choosing what seems to them to be the most reasonable inference. Only when there is a complete absence of probative facts to support the conclusion reached does a reversible error appear. But where, as here, there is an evidentiary basis for the jury's verdict, the jury is free to discard or disbelieve whatever facts are inconsistent with its conclusion. And the appellate court's function is exhausted when the evidentiary basis becomes apparent, it being immaterial that the court might draw a contrary inference or feel that another conclusion is more reasonable." 327 U.S. at 653, 66 S.Ct. at 744.

Although Lavender v. Kurn, *supra*, was an FELA action, that standard is applicable in Jones Act cases. Ballard v. Forbes, 208 F.2d 883 (1st Cir., 1954). *See also* Fleming v. American Isbrandtsen Lines, Inc., 451 F.2d 1329 (2d Cir., 1971) at 1331.

Based upon the facts in evidence, and applying the standard just discussed, I cannot say as a matter of law that the jury was wrong in reaching its conclusion and that there was not sufficient evidence upon which to base its finding.

## MOTION FOR NEW TRIAL

■ The defendant next contends that he is entitled to a new trial because the verdict was inconsistent or, in the alternative, because it was excessive. Defendant urges that while the jury might properly have found unseaworthiness and no negligence, it could not have found negligence and seaworthiness, because to do so would be hopelessly inconsistent. The concepts of seaworthiness and negligence are separate in maritime litigation. Mitchell v. Trawler Racer, Inc., 362 U.S. 539, 80 S.Ct. 926, 4 L.Ed. 2d 941 (1960). The shipowner's duty to provide a seaworthy vessel is absolute. It is a form of absolute duty owing to all within the range of its humanitarian policy. Seas Shipping Co. v. Sieracki, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099 (1946). The duties imposed upon the shipowner by negligence concepts are far less onerous. There is no liability unless the owner has failed to exercise due care under all the circumstances. To the shipowner the difference between unseaworthiness and negligence is a dif-

2. N.T. p. 73

3. N.T. p. 79

4. N.T. p. 14

5. N.T. p. 13

6. N.T. p. 14

ference between an absolute duty and due diligence. Aloysius Nosal v. Calmar SS Corp., 339 F.Supp. 1235 (EDPA, 1972).

The jury came back with a verdict finding the vessel seaworthy but finding negligence on the part of the shipowner. Upon its face it would seem as if this might be an inconsistent verdict. However:

" . . . it is the duty of the courts to attempt to harmonize the answers, if it is possible under a fair reading of them: 'Where there is a view of the case that makes the jury's answers to special interrogatories consistent, they must be resolved that way' . . . we therefore must attempt to reconcile the jury's findings, by exegesis if necessary . . . " Gallick v. B & O RR Co., 372 U.S. 108 at 119, 83 S.Ct. 659 at 666, 9 L.Ed.2d 618.

In support of its position, the defendants cite Poller v. Thorden Lines A/B and Gustaf B. Thorden v. Jarka Corp. of Phila., 336 F.Supp. 1231 (EDPA, 1970), and Turner v. The Cabins Tanker, Inc., 327 F.Supp. 515 (D.Del. 1971). These cases are distinguishable from the case at hand because upon the facts of those cases, there was no way in which an inconsistent verdict could have been reconciled. However, there is no such problem in the case at hand. The findings of negligence but no unseaworthiness are not hopelessly inconsistent. The jury could have found that, in general, the ship was reasonably fit without a ladder leading from an upper bunk, but under the circumstances of the ship heading into rough seas, which were known to be rough by the Master, that there arose a duty to furnish a ladder, and that the failure to furnish a ladder was a failure to exercise due care under the circumstances. Therefore, the findings of the jury are reconcilable.

Defendant next contends that the jury's verdict was excessive. The jury returned a verdict for $8,000.00 and found the plaintiff to be negligent also, and the plaintiff's negligence was 35% the cause of plaintiff's injuries. I cannot say that this verdict was so excessive as to shock the conscience of the court; therefore, defendant's contention is denied.