Everett NOACK, Plaintiff-Appellee,

v.

AMERICAN STEAMSHIP COMPA-NY, Defendant-Appellant,

No. 73-1326.

United States Court of Appeals, Sixth Circuit.

Argued Oct. 9, 1973.

Decided Feb. 1, 1974.

938

William S. Busch, New York City, for defendant-appellant; Cadwalader, Wickersham & Taft, New York City, Marshall, Melhorn, Bloch & Belt, Toledo, Ohio, on brief; John A. Sullivan, New York City, Arnold F. Bunge, Jr., Toledo, Ohio, of counsel.

Merritt W. Green, II, Green & Lackey, Toledo, Ohio, on brief, for plaintiff-appellee.

Before PECK and McCREE, Circuit Judges, and ALLEN, District Judge.*

JOHN W. PECK, Circuit Judge.

In this action charging negligence under the Jones Act, 46 U.S.C. § 688, and unseaworthiness under the General Maritime Law, the seaman plaintiff sought damages for injuries that he suffered when he slipped into a deck opening while helping to clean out the bilges in the lower engine room of the defendant-shipowner's vessel. The jury returned a verdict in the amount of $150,000 which was reduced by half because the jury found that the plaintiff had been fifty percent contributorily negligent. This appeal by the defendant-shipowner followed.

Defendant-appellant owned and operated a Great Lakes self-unloading bulk cargo vessel. Due to the cold and ice, Great Lakes vessels do not sail during the winter months and at the time of the accident the vessel had been laid up for the winter and was being fitted out for the 1971 sailing season. The plaintiff-appellee, a veteran of 25 years service with the appellant, was employed as a "wiper" aboard the vessel, which job includes wiping up grease and oil from the decks of the vessel.

The threshold question in this case is whether the appellee is a seaman within the meaning of the Jones Act. The test to determine that question was set forth in Nelson v. Greene Line Steamers, Inc., 255 F.2d 31 (6th Cir. 1958), cert. denied, 358 U.S. 867, 79 S.

* Honorable Charles M. Allen, United States District Judge for the Western District of Kentucky, sitting by designation.

Ct. 100, 3 L.Ed.2d 100, and requires that (1) the vessel on which the claimant is employed be in navigation, (2) the claimant have a more or less permanent connection with the vessel, and (3) the claimant be aboard primarily to aid navigation. Appellant maintains that the first element of the test should have been determined as a matter of law and should not have been presented to the jury as a question of fact.[1] As to the third element, appellant assumes the vessel was not in navigation as a matter of law and argues the impossibility of aiding the navigation of such a vessel. Since we conclude that the question of "in navigation" is properly one of fact and that the jury's findings are not clearly erroneous, we need not further consider this latter claim.

To support its contention that the first element is a question of law, the appellant relies on Antus v. Interocean Steamship Co., 108 F.2d 185 (6th Cir. 1939); Desper v. Starved Rock Ferry Co., 342 U.S. 187, 72 S.Ct. 216, 96 L.Ed. 205 (1952); and Nelson v. Greene Line Steamers, *supra*. *Antus* involved a situation similar to that before us in which we held that as a matter of law an employee working aboard a ship during a winter lay-up period was not a seaman. However, *Antus* was not the last word on the subject. Twelve years later, in *Desper*, which involved sight-seeing boats which were laid up during the non-summer months, the Supreme Court held that a boat operator who was hired to overhaul the boats during the spring was not, as a matter of law, a seaman within the purview of the Jones Act and cited *Antus* with approval. However the Court interestingly pointed out that:

"The many cases turning upon the question of whether an individual was a 'seaman' demonstrate that the matter depends largely on the facts of the particular case and the activity in which he was engaged at the time of

the injury." 342 U.S. at 190, 72 S.Ct. at 218.

It is the later case of Butler v. Whiteman, 356 U.S. 271, 78 S.Ct. 734, 2 L.Ed. 2d 754 (1958), that we find dispositive. In *Butler*, the owner of a wharf on the Mississippi River moored a barge to the wharf and lashed a tug to the barge. For some ten months the tug had been lashed and at the time of the accident was undergoing rehabilitation preparatory to Coast Guard inspection. During this period the ship had neither captain nor crew. The decedent had been employed as a laborer on an hourly wage scale and on the morning of the accident had been engaged in cleaning the tug's boiler. Decedent's death was attributed to drowning although there were no witnesses to either the death or the circumstances leading to the death. The District Court directed a verdict for the defendant-shipowner and the Court of Appeals affirmed on the grounds that the vessel was a dead ship, the decedent was not a seaman or member of the crew and there was no evidence on which negligence could be predicated. The Supreme Court remanded the case for trial on the grounds that there was an evidentiary basis for jury findings as to whether the tug was in navigation, whether the decedent was a seaman and whether employer negligence was a factor in the death.

By comparison, the facts of the instant case present a much stronger case for jury submission than did the *Butler* case. For example, although Butler was a casual employee, a laborer performing odd jobs around the wharf, Noack was a seaman with appropriate papers and union membership who had been permanently employed by the appellant-shipowner for over twenty-five years and who worked only on the vessel. In this regard, it is noted that Noack had been hired by the appellant through the seaman's union as a wiper for the 1971 season and that barring the injury he

---

1. In response to appellant's special interrogatory, the jury found that the vessel was in navigation.

would have worked as a wiper during that upcoming season. Also, in *Butler* the tug had been undergoing rehabilitation and had been inoperable for at least ten months, while here the vessel had stopped operating only because of the ice and cold condition and would resume operations when the ice thawed. In addition, the work that Noack was performing at the time of the injury was seaman's work of the type that is often accomplished at sea.

In the case of Nelson v. Greene Line, *supra,* decided one month after *Butler* we decided a case involving an excursion steamer which was tied up for winter at a wharf in Cincinnati. Nelson, a regular employee during the excursion season, was employed during this winter period to make repairs and to get the steamer ready for the coming season. The District Court found as a matter of fact that the steamer was not in navigation and that the injured plaintiff Nelson was not a seaman within the Jones Act. Citing *Antus* and *Desper,* but not *Butler,* we concluded that it is the extraordinary case where the evidence permits only one conclusion concerning the claimant's status as a seaman. In *Nelson,* we affirmed the District Court's findings as not being clearly erroneous.

From our review, we conclude that each case must be evaluated on its own facts, thus leaving to the developing case law to draw the determining criteria into sharper focus. We recognize that while courts in the past have applied a technical, narrow view of what constitutes a vessel in navigation or the status of a seaman, today the courts are applying a broad view consistent with the trend to provide a liberal interpretation to remedial legislation such as the Jones Act. See, *e. g.,* Gianfala v. Texas Co., 350 U.S. 879, 76 S.Ct. 141, 100 L.Ed. 775 (1955); Senko v. La Crosse Dredging Corp., 352 U.S. 370, 77 S.Ct. 415, 1 L. Ed.2d 404 (1956); Grimes v. Raymond Concrete Pile Co., 356 U.S. 252, 78 S.Ct. 687, 2 L.Ed.2d 737 (1958); Keymon v.

Tennessee Towing Co., 296 F.2d 785 (6th Cir. 1961).

It is of course true that in the strict sense the lay-up of this Great Lakes vessel effectively took the vessel out of navigation. However, it is also true that the routine of lay-up had been established because the vessels could not operate in the ice and cold. Barring such weather obstacles to a year-round sailing season, it appears that many tasks typically accomplished during the lay-up period could well be accomplished at sea without interruption to regular scheduling for major repairs.[2] Thus under the circumstances it seems clear that the lay-up and fit-out activities are complete parts of the total Great Lakes sailing season. Crew members perform the lay-up and fit-out tasks under the same labor contract that applies during the sailing season. The same discipline and functional management also applies. In view of these facts, we cannot say that there was clear error in the District Court's finding that the plaintiff was properly entitled to the protection afforded by the Jones Act and the general laws of admiralty.

As a second issue, the appellant contends that the District Court's instructions to the jury were erroneous, particularly urging that the instructions as to the vessel's status were contrary to law. However, as previously indicated, under the facts presented we conclude that the Court properly left to the jury the question as to whether the vessel was in navigation. As a second point, appellant claims that the District Court failed to properly specify the criteria which the jury was to use in determining the vessel's status as well as in measuring the appellant's duties under the Jones Act at the time of the accident. We note, however, that defense counsel's only objection to the relevant portion of the charge was, "Defendant will object to that part of the charge which indicated that fitting out may be an act of navigation." This objection

2. The appellee was doing such work at the time of the accident.

not only does not meet the requirements for specificity as stated in Rule 51, Fed.R.Civ.P., but is not germane to the issue raised here. Without a proper objection before the trial court, we may not here consider the matter.

■ Appellant also contends that the Court improperly instructed as to Noack's contributory negligence. Specifically, appellant claims that ". . . if there were oil or grease or mud on the deck which made the deck unsafe to walk on, and if the plaintiff [Noack] knew about such conditions, it was his independent duty as a wiper to clean those conditions up, and that if his injuries were occasioned by his failure to perform his duties as a wiper, he cannot properly recover against [appellant]." Citing Reinhart v. United States, 457 F.2d 151 (9th Cir. 1972) as authority, appellant maintains that a seaman may not recover against his employer for injuries occasioned by his own neglect of some independent duty arising out of the employment relationship, such as here, where his duties as a wiper were to keep the decks clean and free of slippery conditions. In this regard, the appellant concedes that such a proposition is an exception to the general rule in maritime personal injury cases that contributory negligence is not a complete bar to the injured seaman's recovery against his shipowner employer.

To respond to this contention, we first turn to the facts of this case. As mentioned previously, Noack and another seaman, Chapman, were cleaning the bilges at the time of the accident. To explain the task of cleaning the bilges, testimony at the trial indicated that there is a 4-foot space between the bottom of the ship and a deck area. The deck area is essentially composed of steel plates. Over a period of time the area collects such debris as dirt, grease and oil. A bilge pump is located at one end of the area and pumps out any accumulated liquid. At intermittent periods, someone is required to go into the bilge area and scrape the solid accumulations, put it in pails and dispose of the matter. Chapman did the scraping and filled the pails which were passed to Noack who in turn emptied them into the cargo hold area. Previously the men had removed one deck plate in Noack's pathway and the accident occurred when he slipped on the deck and fell into the opening created by the plate removal. The testimony of both Chapman and Noack indicated that the deck area was more slippery than normal, with the apparent reason for the condition being the spillage from the pails as they were being carried to the hold area.

■ We conclude that the appellant's arguments regarding contributory negligence are not well taken. Evidence was introduced at trial from which the jury could have reasonably concluded that at the time of Noack's injuries his duties did not require him to clean up the grease and other foreign substances. For example, Chapman testified that he would respond to specific orders but would not usually self-initiate work. Consequently, he testified that although he observed the accumulations on the deck, he would not interrupt his work in the bilge area to clean up the floor in the absence of a specific order to that effect. The record does not reveal that this deviated from the usual practice or that a greater degree of care was expected of the appellee.

In addition, the appellant had submitted special interrogatories to which the jury responded that Noack's injuries were not caused by his failure to perform his duties as a wiper. We also note that evidence was introduced that the deck plates were worn smooth and were at the time of the accident slippery. On the other hand, appellant's counsel points out that the open hole into which Noack fell was dangerously close to the pathway he used in emptying the pails and that Chapman's testimony clearly indicated that he had no reason for not replacing the deck plate when he finished his work in that area. Of course, these considerations were undoubtedly a factor that led to the jury's

finding that Noack was fifty percent contributorily negligent.

Appellant also contends that the jury's findings that the injuries were caused by Noack's failure to properly perform his duties as a wiper and that the vessel was in navigation was against the weight of the evidence. This contention is without merit.

Appellant's final contention regards the testimony and calculations of appellee's economic expert. It claims that the expert erroneously calculated the loss of future earnings by applying labor contract wage rates to the average number of days which Noack worked over the past five year period. Citing our recent decisions in what are referred to as the *Cedarville* cases (United States Steel Corp. v. Lamp, 436 F.2d 1256 (6th Cir. 1970), cert. denied, 402 U.S. 987, 91 S.Ct. 1649, 29 L.Ed.2d 153, and United States Steel Corp. v. Fuhrman, 479 F.2d 489 (6th Cir. 1973), cert. denied, 414 U. S. 859, 94 S.Ct. 71, 38 L.Ed.2d 110 (1973)), appellant claims that not only is the use of a labor contract to achieve such computations prohibited but also that the record of past earnings must be the benchmark to calculate any loss of future earnings.

The governing principles establishing future earnings capacity were stated in *Cedarville*, 436 F.2d at 1270, wherein we stated:

> "The claimant must first establish his normal annual earning capacity, which, in the absence of evidence of special circumstances indicating an ability to rise beyond his prior level of employment, would consist of a projection of claimant's earnings history, taking into account all available data relevant to wage adjustment."

We conclude that the District Court did not erroneously apply these principles. Although our discussion in *Cedarville* impliedly acknowledged that earnings may not always increase from year to year, we were not treating with the unusual situation here presented wherein a seaman was hired at a lower job rating and pay scale than he had held during his previous years of employment with the same company, and the record does not disclose an ability to rise above that lower level. Consequently, having little empirical data from which it could establish a normal earning capacity at the new level, the trial court in the present case properly allowed testimony using current wage earnings information and projections therefrom. In addition, we do not find that the figures used were clearly erroneous.

All other contentions, we conclude, are without merit and accordingly the judgment of the District Court is affirmed.