**Hans PEYMANN, Plaintiff-Appellant,**

**v.**

**PERINI CORPORATION, Defendant-Appellee.**

**No. 74–1143.**

United States Court of Appeals, First Circuit.

Argued Oct. 8, 1974.

Decided Nov. 22, 1974.

Rehearing Denied Dec. 24, 1974.

Certiorari Denied April 14, 1975.

See 95 S.Ct. 1572.

David B. Kaplan, Boston, Mass., with whom Kaplan, Latti & Flannery, Boston, Mass., was on brief, for plaintiff-appellant.

James C. Gahan, Jr., Boston, Mass., for defendant-appellee.

Before ALDRICH, McENTEE and CAMPBELL, Circuit Judges.

ALDRICH, Senior Circuit Judge.

Plaintiff, a seaman, brought suit against his employer, a shipowner, in the usual counts: Count One for negligence under the Jones Act, 46 U.S.C. § 688; Count Two for unseaworthiness, and a maintenance count not presently involved. The court directed a verdict for the defendant on Count One, and the jury found for the defendant on Count Two. Plaintiff alleges error in the direction of the verdict and, with respect to the second count, in the charge. For reasons we will come to, there was no error in directing the verdict. We will deal first with Count Two.

■ Before doing so, however, we express strong criticism of plaintiff's counsel for an inadequate appendix. No experienced appellate practitioner could think that the skimpy excerpts of testimony set forth were all that were relevant to the questions at issue. This selective presentment is a violation of F.R.A.P. 10(b). *Cf.* Moran Towing Corp. v. M. A. Gammino Constr. Co., 1 Cir., 1966, 363 F.2d 108, 109. We have long complained of a practice obliging the appellee to fill in substantial interstices, in turn requiring us to sashay from one appendix to the other. Chernack v. Radlo, 1 Cir., 1964, 331 F.2d 170, 171–172. We notify the bar that serious breaches by an appellant in this respect hereafter may result in the imposition of costs chargeable against counsel personally. Plaintiff in this case offended not only with respect to the testimony, but in over-reducing the charge.

Plaintiff's claim of unseaworthiness is based upon the following facts. On the day in question defendant's tug Gorham Whitney was docked undergoing a substantial engine overhaul. This was being done by plaintiff, who was the chief engineer, and one assistant. It was necessary to raise the cylinder heads, one at a time, from the engine. This was effected by a chain fall (a chain and pulley device) temporarily attached to a shackle in the deck immediately overhead. The fall weighed some forty pounds, and while plaintiff was attaching it in this instance he slipped and fell, injuring his back.

In order to affix the fall to the ceiling, plaintiff was obliged to stand upon

something. He testified that defendant should have furnished him a stepladder; that he looked for such but could not find one, and that, accordingly, he was obliged to stand "like a bird" on an iron pipe rail which, unnoticed by him until afterwards, was covered with oil. He further testified that it was customary to have three men on the job, but that defendant had constantly refused his requests for this additional help.

On this basis plaintiff claimed that defendant had supplied a place to work that was unsafe in three particulars: no ladder; oil on the rail, and insufficient assistance. Defendant's response was that a ladder was available; that plaintiff should not have stood on the rail, at least without wiping it, and that it was not customary, or necessary to have three men when the work was proceeding at a leisurely pace at the dock instead of by emergency repair at sea. Defendant, in addition, obtained an admission from plaintiff that as chief engineer in charge of the engineroom it was his duty to obtain the stepladder if one was available and needed, and to maintain proper working conditions and "keep this engine rail clean and free from various substances like oil. . . ." Plaintiff countered that the oil "is drippings from the cylinder heads when we take them off and the liners out. There's always some oil coming down to the railing and the floor"— a somewhat self-stultifying position for plaintiff to take in view of his admittedly mounting the railing without looking for, and removing, the oil he knew, on that basis, was necessarily there.

The portion of the charge to which plaintiff objects is the following.

"If you find that the duty of maintaining this engine room in a seaworthy condition was solely a duty which the plaintiff owed to his employer to perform, and if you find that the condition of unseaworthiness which was the cause of the plaintiff's accident was due solely to the failure of the plaintiff to carry out his duty to his employer to keep that engine room in a seaworthy condition, then you must find for the defendant in this case.

"In short, the plaintiff cannot recover on the basis of an unseaworthy condition which is due wholly and solely to a failure on his part to perform the responsibilities that were assigned to him. That is one of the aspects of the case that it is the burden of the defendant to establish. . . . [that it was solely the plaintiff's duty to keep this engine room in a seaworthy condition.]"

The bracketed material was not included in plaintiff's appendix. Nor was the court's full explanation of the pro rata rule if plaintiff's negligence was only contributory—that if plaintiff's injury was due only in part to his failure and in part to improper conduct by defendant, plaintiff might recover ratably. See Socony-Vacuum Oil Co. v. Smith, 1939, 305 U.S. 424, 431, 59 S.Ct. 262, 83 L.Ed. 265; Donovan v. Esso Shipping Co., 3 Cir., 1958, 259 F.2d 65, 67, cert. denied, 359 U.S. 907, 79 S.Ct. 583, 3 L. Ed.2d 572. Finally, at plaintiff's request the court illustrated and charged in explicit terms that defendant could not rely upon any principle of assumption of the risk.

We cannot read the charge as a whole without concluding that it fairly informed the jury that, irrespective of plaintiff's duty, defendant would be liable if there should have been three men present and the absence of the third man contributed to the accident; or if a stepladder was needed but was not available; or if, in the jury's view, plaintiff was only contributorily negligent. Consequently the complained-of instruction was, both because of other instructions, and in direct terms, applicable only if the jury found that the accident was due solely to the failure of plaintiff, as the one in charge, to have the engineroom seaworthy by obtaining an available ladder or, if it was proper to use the rail, to see that it was free of oil before he stepped on it.

■ The question of the ladder need not detain us. If a vessel makes available two means for performing an act, one of which is unsafe, *e. g.*, two tools, one of which is defective, or two ladders, one of which is slippery, it would be an indirect application of the proscribed doctrine of assumption of the risk to foreclose recovery completely if the seaman chose the less desirable alternative. *Cf. Socony-Vacuum*, ante, 305 U.S. at 431–432, 59 S.Ct. 262. But this does not mean that a seaman may not be wholly barred if he selects a method he could not reasonably think open to him. Thus if the cook were given a proper bottle opener but chose to knock the head off the bottle, he could not complain. Or if there were two gangways and one was marked "Do not use," it could not be thought that a seaman insisting upon using it despite the proferred alternative could complain of the ship's unseaworthiness. So, in the case at bar, if there was a ladder available which was the single means the engineer was supposed to use, as, indeed, his own testimony suggested, it would not be proper to hold the vessel responsible to any degree if his decision not to use it was a free choice. Berke v. Lehigh Marine Disposal Corp., 2 Cir., 1970, 435 F.2d 1073, cert. denied, 404 U.S. 825, 92 S.Ct. 55, 30 L.Ed.2d 53 (seaman injured when not using safety line; no evidence line was not available). The court made its charge particularly clear by conditioning nonliability upon a finding that plaintiff, as the person having full freedom of decision, was the sole cause of his accident. This is not a case where a lower echelon employee was offered defective means, so that both he and the ship may have been at fault. *Cf.* Noack v. American Steamship Co., 6 Cir., 1974, 491 F.2d 937.

■ Similar reasoning applies if plaintiff, having the primary duty to clean up oil, unnecessarily proceeded without doing so. If a seaman had spilled oil and then, rejecting an opportunity to wipe it up, had walked in it, it would shock the conscience to allow him to recover. The rule is settled that such negligent use of an otherwise seaworthy vessel precludes relief. *See* Sotell v. Maritime Overseas, Inc., 2 Cir., 1973, 474 F.2d 794, 796; June T., Inc. v. King 5 Cir., 1961, 290 F.2d 404, 407; Williams v. The S.S. De Larrinaga, 4 Cir., 1961, 287 F.2d 732, 735; Donovan v. Esso Shipping Co., ante, 259 F.2d at 67; Seitz v. M.V. The Captantonis, D.Or., 1962, 203 F.Supp. 723. We see little difference in the present case. Plaintiff, in charge of the operation, knew that the cylinder heads dripped oil. He knew, too, that it was his duty to keep the engineroom in a safe condition. Instead of passing a rag over the rail, he proceeded, indifferently, to step on it, and then, unless the court's instruction was correct, would seek to hold the ship even though the jury were to find the fault solely his.[1]

■ In similar circumstances, recovery was barred in Walker v. Lykes Bros. S.S. Co., 2 Cir., 1952, 193 F.2d 772, where a ship's master was injured in his own quarters by broken equipment he was charged to repair, but neglected to attend to. *Walker* has been read to bar recovery whenever a seaman's injury has been caused in part by the breach of his contractual duty to his employer, thus permitting an employer's action for non-performance, and creating a set-off.

[1]. The extreme nature of plaintiff's contention may be illustrated by the following quotation from his reply brief.
"[A]s indicated in . . . appellant's Brief the film of oil on the engine rail that Mr. Peymann observed after his fall was continuously present during an overhaul operation. Simple logic dictates that if Mr. Peymann was required to continuously wipe the oil from the rail every time oil dripped from the engine's cylinder heads, the overhaul task would never be completed."
To us simple logic dictates that plaintiff had to wipe the oil off the rail only when he was about to stand on it to fasten or unfasten the chain fall.

*See* Reinhart v. United States, 9 Cir., 1972, 457 F.2d 151, 154. On that broad a reading, *Walker's* guidance was properly declined by this court in Boat Dagny, Inc. v. Todd, 1 Cir., 1955, 224 F.2d 208, where the plaintiff breached his duty to supervise someone else, but the ship was independently at fault. In *Boat Dagny* the ship· was made unseaworthy by reason of a defective generator. When the ship's lighting failed as a consequence, the master was injured. The defendant showed that the engineer could have repaired the generator if he had exercised due care, and charged that because the master's duty was to supervise the engineer, the master could not recover. Observing that the fellow servant rule no longer applies in admiralty·, we held that the master's failure sufficiently to supervise the engineer was but a contributory fault.

■ We regard this as quite different from *Walker*, where the master failed to supervise himself, and the fault was his alone. While we criticized some of 'the court's language, *Boat Dagny* does not contradict a strict reading of *Walker* that a seaman may not recover where his breach of duty constitutes the sole cause of injury. Our decision merely followed the self-evident proposition that not every breach of duty will assign a seaman full responsibility for his injury. *See also* Noack, ante, 491 F.2d at 941; Mason v. Lynch Bros. Co., 4 Cir., 1956, 228 F.2d 709, 712; Becker v. Waterman S.S. Corp., 2 Cir., 1950, 179 F.2d 713, 715–716. In the case at bar, as in *Walker*, the jury might have found it was plaintiff's primary duty to maintain the engineroom in a seaworthy condi-

tion, and that his conduct in stepping on the rail without first wiping off the oil, placed there by his own conduct, was his sole responsibility.[2]

■ Turning to Count One, it was proper to direct a verdict under the Jones Act count in view of the fact that a necessary element of that claim was proof of unseaworthiness. As plaintiff pointed out in his request for instructions, the only negligence asserted under Count One was the failure to furnish a seaworthy vessel. This failure was the sole issue under the second count. Since manifestly plaintiff could not have cumulative recoveries, Myers v. Isthmian Lines, Inc., 1 Cir., 1960, 282 F.2d 28, 29–30 & n. 1, cert. denied, 365 U.S. 804, 81 S.Ct. 469, 5 L.Ed.2d 461, and could not recover under the Jones Act count at all unless he established unseaworthiness, it was appropriate to submit that issue to the jury, under the second count, as the single question. Blankenship v. Ellerman's Wilson Line, New York, Inc., 4 Cir., 1959, 265 F.2d 455, cited with approval in *Myers*. No purpose would be served in asking the jury to travel a second, and longer, road, to the same destination.

Affirmed.

## ON PETITION FOR REHEARING

ALDRICH, Senior Circuit Judge.

Plaintiff has filed a petition for rehearing addressed to the propriety of our ruling that the jury verdict for the defendant on the unseaworthiness count rendered moot, or disposed of, plaintiff's claim that he should have been permitted to go to the jury on the negligence count.

2. This holding is not to disagree with a recent state case, Caddy v. Texaco, Inc., 1973 Mass. A.S. 177, 292 N.E.2d 348. There a seaman was instructed to clean up oil and do some other work, but was not told in what order to proceed. The court held that his doing the other work first could only make him contributorily negligent. Here plaintiff was the one to tell himself. Whatever may be the limits of this doctrine, there must be a point where one in charge cannot give himself the wrong instruction and then recover from the ship. Without deciding, we may suggest that if in *Caddy* the seaman had been instructed to clean up the oil first, but had gone ahead, instead, with his other work, he could not recover for slipping in the oil because by hypothesis he had been offered a safe place to work but had taken the unsafe place, against orders. If he followed orders he would have had a safe place to work.

**1324**

While we find the petition without merit, the brief in support is based upon a misconception it might be well to answer.

 The district court in its charge defined as unseaworthiness all of the deficiencies asserted as resulting from defendant's alleged negligence. Except for flirting with some manifestly mistaken definitions of unseaworthiness[1] plaintiff "concedes that, as noted by this Court, the theories of liability relied upon in the case at bar to establish both Jones Act negligence and unseaworthiness under the general maritime law were the same." His contention is not that we misidentified the bases of liability, but that we misunderstood "the distinction between causation in Jones Act negligence and causation in the general maritime remedy of unseaworthiness." Plaintiff says that while "under Rogers, [Rogers v. Missouri Pacific R. R. Co., 1957, 352 U.S. 500, 77 S.Ct. 443, 1 L.Ed.2d 493] causation would be established if the defendant's negligence contributed, in whole or in part (even the slightest), to the Petitioner's injuries," it "seems clear that causation in an allegation of unseaworthiness requires causation in the common law sense *or something very close thereto,*" [Emphasis supplied] and consequently placed a higher burden upon him. We emphasize the waffling because plaintiff neither explains its meaning nor supports it; the heavy burden of "causa-

tion in the common law sense" is supported by (and only by) Devitt & Blackmar, Federal Jury Practice and Instructions, 2d ed. 1970, ¶ 93.09. This is a misunderstanding of the law applicable to seamen.[2]

The reason why under the Jones Act the plaintiff is entitled to a charge that he need show only that defendant's negligence contributed to his injury was fully explained in Rogers. Basically it is because, as distinguished from the common law, where defendant's negligence must be the "sole, efficient, producing cause" and plaintiff would be barred if his own negligence was a contributing cause, the Jones Act "expressly imposes liability upon the employer to pay damages for injury or death due 'in whole or in part' to its negligence." See 352 U.S. at 505–507, 77 S.Ct. at 449. But so does the law of unseaworthiness. Pope & Talbot, Inc. v. Hawn, 1953, 346 U.S. 406, 74 S.Ct. 202, 98 L.Ed. 143. This does not mean, in either instance, that defendant's fault must not be shown to be *a* cause—there must, of course, be a connection—it merely need not be *the* cause. The distinction was well brought out in Farnarjian v. American Export Isbrandtsen Lines, Inc., 2 Cir., 1973, 474 F.2d 361, at 364.

We note, in conclusion, that the district court properly charged the jury in exactly this sense.[3]

Petition denied.

1. *E. g.*, Lunsford v. Halcyon S.S. Co., E.D. Pa., 1973, 354 F.Supp. 573, 577.

2. We have frequently expressed our apprehensions with respect to general compilations of jury instructions. *See, e. g.*, McMillen v. United States, 1 Cir., 1967, 386 F.2d 29, at 32. They are dangerous because no authors, however erudite, can have a comprehensive substantive background in all fields. In ¶ 93.05 of Devitt & Blackmar there is a suggested special interrogatory, supposedly, (but, on investigation not), supported by authority, that would be jettisoned by any admiralty lawyer. Our objection to these compilations is that they may lull unsuspecting judges into not doing their homework.

3. In speaking of "*a* proximate causal connection between the unseaworthiness and the injury," [emphasis ours] the court gave a single, and very clear, example—an unseaworthy "slippery top deck, but the plaintiff fell in the engine room." We might suggest that the legalese "proximate" is a word not too helpful to a lay jury, and might well be avoided altogether, but it can do no harm so long as the meaning appropriate to the case is articulated. [Where, as in the case at bar, the charge includes an instruction to reduce the verdict by the proportion,] if any, that plaintiff's negligence contributed, the articulation is apparent.