**James KELLEY, Plaintiff–Appellee, Cross–Appellant,**

v.

**SUN TRANSPORTATION COMPANY, Defendant–Appellant, Cross–Appellee.**

Nos. 88–2533, 88–2586.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 25, 1989.

Decided April 17, 1990.

---

Samuel A. Mormino, Jr., Richard Shaik-ewitz, Wiseman, Shaikewitz, McGivern, Wahl, Flavin & Hesi, Alton, Ill., for plain-tiff-appellee, cross-appellant.

Hubert I. Binowitz, Goldstein & Price, St. Louis, Mo., for defendant-appellant, cross-appellee.

Before BAUER, Chief Judge, RIPPLE, and MANION, Circuit Judges.

RIPPLE, Circuit Judge.

James Kelley sued his employer, Sun Transportation Company (Sun), for injuries suffered during the course of work on a towboat on the Missouri River. The suit was based on the Jones Act, 46 U.S.C.App. § 688. On July 6, 1988, the district court, hearing the case without a jury, entered judgment in favor of the plaintiff. Total damages were calculated to be $237,950.00. The judgment against Sun was lowered by 25% to $178,463.00 to reflect contributory negligence by Mr. Kelley. Sun appealed the judgment against it, and Mr. Kelley cross-appealed the finding of 25% contrib-utory negligence against him. We now affirm the district court in both respects.

## I

## BACKGROUND

### A. *Facts*

On August 9, 1985, Mr. Kelley was in-jured while employed as the first mate on the towboat M/V Dan C. Burnett. As first mate, Mr. Kelley was in charge of the deck crew.[1] He was injured when, along with a deckhand (Michael Gray), Mr. Kelley at-tempted to remove slack in a cable that was connected by a 75–pound ratchet. At the end of the ratchet, a curved hook (called a "pelican hook") was connected to another hook. To keep the hooks in place, a metal ring ("keeper") was slipped over each one. Gray was standing in front of Mr. Kelley. When the two men pulled on the cable, the keeper came loose, allowing

---

1. At oral argument Sun's counsel explained that the captain of the ship is at the top of the line of authority on a towboat and is in overall charge of all operations. Next in command is the first mate, who is generally in charge on the deck.

the pelican hook to open. The two men fell backwards, with Gray falling on top of Mr. Kelley.

At trial, Mr. Kelley could not recall if he examined the keeper before they began to tug on the cable. He claimed that, because Gray was an experienced deckhand, he assumed that Gray was watching the keeper. There was evidence that a keeper comes loose approximately one time per month, or about 3% to 4% of the time used. About a month after the fall, Mr. Kelley experienced back pain and visited a doctor. He returned to work on October 4, 1985. Mr. Kelley continued to work until September 20, 1986, when he experienced severe back pain. He was diagnosed as having a lumbar strain and possible herniated disc, and subsequently underwent surgery on his back in October 1986.

## B. *District Court Opinion*

The district court, sitting without a jury, heard evidence of the injury and the circumstances of the accident. The court found that Mr. Kelley, because of his position as first mate, was in the "technical lead position" in performing the act of removing slack in the cable. Gray, the deckhand, had the "practical lead position" because of his position in front of Mr. Kelley. *Kelley v. Sun Transp. Co.,* No. 87–5099, slip op. at 4 (S.D.Ill. July 6, 1988). Further, the court found that Gray "was an experienced deckhand" and that Mr. Kelley "was entitled to rely upon Gray's known capabilities." *Id.* at 5. Because Gray failed to check the condition of the pelican hook after the first pull, the court found that he was negligent and imputed that negligence to Sun. *Id.*

The district court found that Mr. Kelley had the chief responsibility to monitor the actions of the deckhands on the day of the accident. Mr. Kelley "possessed a technical responsibility being in charge of the crew to monitor its efforts to handle the ratchets in a reasonably safe manner." *Id.* Therefore, the court found that Mr. Kelley was contributorily negligent in the accident

that led to his injury. Acknowledging that apportionment of negligence was appropriate in Jones Act cases, the court found that Sun (through Gray) was responsible for 75% of Mr. Kelley's injury, and that Mr. Kelley was responsible for the remaining 25%. The court finally determined that the total cost of the injury—including lost wages, medical bills, pain and suffering, etc.—was $237,950.

## II

## ANALYSIS

### A. *Recovery by Ship's Officer for Injury under the Jones Act*

Sun argues that Mr. Kelley had the responsibility to ensure that the operations on the boat were conducted in a safe manner and that his failure to do so caused his injury. Since Mr. Kelley was in charge of the deckhands, Sun asserts that, as a matter of law, he cannot claim damages for an accident that resulted from his failure to perform properly his supervisory role.

### 1. *Walker* and *Peymann*

Sun principally relies on two cases to support its assertion that Mr. Kelley, as a supervisory officer, is barred from recovery. In *Walker v. Lykes Bros. S.S. Co.,* 193 F.2d 772 (2d Cir.1952), Judge Learned Hand was presented with an injury incurred by a ship's master when a filing cabinet drawer in his office fell on him after a catch malfunctioned. The defendant argued that the duty to ensure that the catch operated correctly belonged to the master, and thus his own negligence caused his injury.

In Judge Hand's view, this situation did not present a claim of contributory negligence, as that term usually is employed in the law of torts. Rather, it presented an absolute bar to the plaintiff's recovery. To reach this conclusion, Judge Hand first acknowledged—albeit somewhat grudgingly [2]—the "conventional rubric" that contrib-

---

**2.** He wrote: "it seems anomalous to think of the injured party as being under a duty not to

expose himself to the chance that the wrongdoer

utory negligence is "the breach of a duty to the wrongdoer." *Id.* at 773. He then drew a sharp distinction between this "duty"—"which the law imposes upon the injured person, regardless of any conscious assumption of a duty towards the wrong-doer"—and a duty "which the injured person has consciously assumed as a term of his employment." *Id.* at 773. For breach of the general duty of care owed to the wrongdoer under a contributory negligence analysis, the plaintiff's recovery under the Jones Act is reduced; in other words, the comparative negligence of each act is assessed. By contrast, for breach of the duty of employee to employer, recovery is prohibited.[3] Applying this analysis, Judge Hand concluded:

> In the case at bar, since the plaintiff was master of the ship, he fell within this doctrine, because it is well settled that the "duty of the master in the case of damage to the ship is to do all that can be done towards bringing the adventure to a successful termination; to repair the ship, if there be a reasonable prospect of doing so at an expense not ruinous;" just as it is his duty to care for the cargo, or not to overload the ship. Thus, if the plaintiff failed to repair the catches, although he was able to do so, his failure was not only "contributory negligence" in the first sense, but also a breach of his duty to the defendant which barred his recovery absolutely.

*Id.* at 774 (footnotes omitted).

The second case, *Peymann v. Perini Corp.*, 507 F.2d 1318 (1st Cir.1974), *cert. denied*, 421 U.S. 914, 95 S.Ct. 1572, 43 L.Ed.2d 780 (1975), dealt with a chief engi-neer who injured himself in the engine-room by slipping off an oily pipe rail. The plaintiff charged that he should have been supplied with a stepladder. At trial, the plaintiff admitted that it was his duty to obtain a stepladder if needed, and to ensure that, among other things, the rail was free from oil. *Id.* at 1321. The First Circuit agreed with the trial court that a seaman cannot create the peril and then make a claim against the ship. *Id.* at 1322–23.[4]

### 2. *Subsequent Decisions*

At oral argument, Sun's counsel acknowledged that there is a substantial body of authority holding that, if the employer is independently negligent through one of his other servants, the negligence of the supervisory employee is to be considered on a contributory negligence analysis, but not as a total bar. The Second Circuit had an opportunity to revisit the *Walker* rule in *Johannessen v. Gulf Trading & Transp. Co.*, 633 F.2d 653 (2d Cir.1980). In that case, the ship's captain died after he descended into a gas-filled tank on the ship. The rescue attempt was unsuccessful, apparently due to negligence on the part of his crewmen. After reviewing the Jones Act, the court concluded that "[a]lthough the master of a vessel has total charge of all operations, the negligence of his subordinate is not imputed to him for purposes of a Jones Act claim." *Id.* at 655 n. 2.

In *Viller's Seafood Co. v. Vest*, 813 F.2d 339 (11th Cir.1987), the Eleventh Circuit specifically declined to follow *Peymann*. The plaintiff, a ship's captain, was injured when a ladder upon which he was standing

---

may himself be delinquent...." 193 F.2d at 773.

**3.** As then-Circuit Judge John M. Harlan later described the rationale, the bar to recovery was based "upon the employer's independent right to recover against the employee for the non-performance of a duty resulting in damage to the employer, which in effect offsets the employee's right to recover against the employer for failure to provide a safe place to work." *Dixon v. United States*, 219 F.2d 10, 16–17 (2d Cir.1955); *see also Reinhart v. United States*, 457 F.2d 151, 154 (9th Cir.1972).

**4.** The injury in *Peymann,* like that in *Walker,* occurred when the ship's officer conducted his own activity in a negligent manner. The *Peymann* court contrasted these facts with its previous decision in *Boat Dagny, Inc. v. Todd,* 224 F.2d 208 (1st Cir.1955), in which "the plaintiff breached his duty to supervise someone else...." 507 F.2d at 1323. The *Peymann* court acknowledged that application of *Walker* was "properly declined" in that situation. *Id.* The holding in *Boat Dagny* that "the master's failure sufficiently to supervise the engineer was but a contributory fault" was "quite different from *Walker,* where the master failed to supervise himself, and the fault was his alone." *Id.*

became unfastened and toppled. The district court held that the ship had no liability to the captain because the injury was caused wholly by his own lack of care. *Id.* at 341. The Eleventh Circuit rejected this view, and limited *Walker* to cases in which "the injured officer actually knew of the existence of the unseaworthy condition before the accident. We are unwilling to extend the doctrine to a case in which no misconduct or actual knowledge of the existence of an unseaworthy condition has been proven." *Id.* at 342–43.

The Fifth Circuit similarly rejected a claim that the plaintiff was barred from recovery due to his failure to carry out a duty owed by him to his employer. *Kendrick v. Illinois Cent. Gulf R.R. Co.*, 669 F.2d 341 (5th Cir.1982) (FELA case). The court, citing *Walker* and *Peymann*, acknowledged that the nonperformance of a duty may offset the employer's liability. *Id.* at 344 n. 6. Nevertheless, the claim would not be totally barred:

> For even if an employee's injury resulted in part from his own negligence, whether in failing to carry out his duties or in some other respect, such negligence would only reduce, not bar, recovery unless the employer were not negligent at all and the employee's negligence was the sole cause of his injury.

*Id.* at 344.

In *Tringali v. Hathaway Mach. Co.*, 796 F.2d 553 (1st Cir.1986), the plaintiff was the boat's master. He was injured when a winch malfunctioned and mangled his leg. The defendant, citing both *Peymann* and *Walker*, claimed that the plaintiff should have recognized and corrected the dangerous condition that led to his injury. The district court disagreed, and the First Circuit affirmed. *Walker* and *Peymann* were distinguishable, the court concluded, because in those cases the ship's officer had actual knowledge of the dangerous conditions and also had a duty to remedy them. *Id.* at 557.

### 3. *Application of Standard*

■ We believe that the modern cases after *Walker* and *Peymann* present the prevalent rule of law in the United States. The inquiry at trial should endeavor to apportion responsibility for the injury. This does not mean, however, that a supervisory employee will recover in every case for injuries suffered on the ship. A ship's officer can be found to be negligent with respect to his accident. If such negligence is the sole cause of the injury, the employer's non-negligence bars recovery. *See Boudreaux v. Sea Drilling Corp.*, 427 F.2d 1160, 1161 (5th Cir.1970). As Judge Hand noted in *Walker*, the bar is not based on the contributory negligence of the officer, but on a finding of no negligence of the employer. But when the employer is negligent, and that negligence is based on activity other than that of the ship's officer, recovery is permitted to the extent of the employer's negligence.

■ The defendant, Sun, would have this court acknowledge the supervisory duties of Mr. Kelley as first mate and end the inquiry there. Accepting such a proposition effectively would bar all ship's officers from recovery for injuries caused at least in part by the negligence of another seaman. This approach frustrates the congressional intent embodied in the Jones Act, which was designed to give seamen an available remedy for injuries sustained in an inherently dangerous profession. Our rejection of a rule absolutely barring recovery by a ship's officer comports with the statute's rejection of a harsh application of contributory negligence. When the Jones Act was adopted in 1915, it extended to seamen the right of recovery against their employers that railroad employees already enjoyed.[5] Congress made clear that contributory negligence does not bar recovery to railroad employees, and thus also cannot act as a bar to seamen. "[T]he fact that

---

**5.** 46 U.S.C.App. § 688(a) states in pertinent part: "Any seaman who shall suffer personal injury in the course of his employment may, at his election, maintain an action for damages at law, with the right of trial by jury, and in such action

all statutes of the United States modifying or extending the common-law right or remedy in cases of personal injury to railway employees shall apply...."

the employee may have been guilty of contributory negligence shall not bar a recovery, but the damages shall be diminished by the jury in proportion to the amount of negligence attributable to such employee...." 45 U.S.C. § 53. Here, the evidence of record certainly supports the determination of the district court that Mr. Kelley's injury was not attributable entirely to his own negligence. Therefore, the court committed no error in determining that Mr. Kelley was not barred totally from recovery.

### B. *Apportionment of Negligence*

■ Sun argues that the apportionment of 75% responsibility to it was error because the facts do not warrant that finding. Sun relies on two cases that found the seamen 80% and 50% at fault respectively. *Burden v. Evansville Materials, Inc.,* 840 F.2d 343 (6th Cir.1988); *Creel v. Drill Tender Jack Cleverly,* 264 F.Supp. 98 (W.D.La.1966). Sun's position is that Mr. Kelley should be treated in a similarly harsh manner due to his skill, experience, and the nature of his responsibilities. Appellant's Br. at 29. For his part, Mr. Kelley argues that the court's apportionment of 25% liability to him is in error, because 1) Gray checked the hook, 2) Gray failed to re-check the hook in the moments between the first and second pull, 3) Mr. Kelley could not supervise Gray because his vision was blocked, and 4) Mr. Kelley was justified in relying on the abilities of Gray, an experienced deckhand.

The findings of the district court cannot be overturned unless they are clearly erroneous. Fed.R.Civ.P. 52(a); *see also Anderson v. City of Bessemer City,* 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985). The parties in *Burden* also requested on appeal that the district court's allocation of responsibility be put aside. The Sixth Circuit declined to do so because of the deference accorded to the findings of the trial court:

> In light of this testimony [expert testimony about the injury], and because the trial judge, sitting as a factfinder, was entitled to use his own experience and common sense in determining the rela-

tive safety of throwing a heavy weight and carrying such a weight on the shoulder, we cannot say that the district court's findings were clearly erroneous. 840 F.2d at 348.

We believe that the district court did not commit error in apportioning the liability in this case. The court heard testimony by Gray and Mr. Kelley, and by experts who commented about ship procedures and the functions (and dangers) of the pelican hooks used by Gray and Mr. Kelley. We cannot say that the district court was clearly erroneous in making its determination based on this evidence.

### Conclusion

For the foregoing reasons, we affirm the judgment of the district court.

AFFIRMED